IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM CARTER, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 17 C 7241 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| CITY OF CHICAGO, RONALD WATTS, | ) | |
| PHILLIP CLINE, DEBRA KIRBY, DARRYL | ) | |
| EDWARDS, ALVIN JONES, KALLATT | ) | |
| MOHAMMED, JOHN RODRIGUEZ, CALVIN | ) | |
| RIDGELL, JR., ELSWORTH J. SMITH, JR., | ) | |
| GEROME SUMMERS, JR., and KENNETH | ) | |
| YOUNG, JR., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Carter has sued the City of Chicago and nine Chicago Police Department "CPD") officers, defendants Ronald Watts, Darryl Edwards, Alvin Jones, Kallatt Mohammed, John Rodriguez, Calvin Ridgell, Jr., Elsworth J. Smith, Jr., Gerome Summers, Jr., and Kenneth Young, Jr. (the "individual officers"), along with former Superintendent of the CPD Phillip Cline and Debra Kirby, the former Assistant Deputy Superintendent and Acting Head of the CPD Internal Affairs Division, under 42 U.S.C. § 1983, alleging multiple constitutional violations stemming from two arrests in 2004 and a third arrest in 2006. All defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons explained below, defendants' motion is denied.

# BACKGROUND[1]

Plaintiff claims that he is just one of many victims of a criminal enterprise run by now-convicted felon and former CPD Sergeant Watts and his tactical team of officers, including the individual defendant officers, that patrolled the Ida B. Wells Homes in Chicago in the 2000s. According to plaintiff, the "Watts Gang" engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, and manufactured false charges against the residents of the Wells Homes. He alleges that high ranking officials in the CPD, including Cline and Kirby, were aware of but took no action to stop the Watts Gang's criminal activity.

On March 3, 2004, plaintiff was arrested by defendants Mohammed, Young, and Edwards, inside a building at the Wells Homes. At the time of the arrest, the officers had no warrant, nor did any of them believe or have any reason to believe that plaintiff had committed any offense. Plaintiff claims that one or more of the officers used excessive force while arresting him. After the arrest the officers agreed to fabricate a story to justify their actions, including creating a false claim that they saw plaintiff with a clear plastic bag containing drugs. They prepared and filed false police reports. Watts formally approved those reports, knowing that they were false. One or more of the officers told their false story to prosecutors, and the other officers failed to intervene in any way despite knowing that plaintiff was innocent.

Five days after his arrest, plaintiff made a formal complaint to the CPD. Defendants Mohammed, Edwards, and Young all made false statements to the CPD's investigator, resulting in a finding of "not sustained."

---

[1] The background section is taken from the well-pleaded factual allegations of plaintiff's complaint which are presumed true for purposes of the instant motion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiff was charged with possession of a controlled substance and was detained awaiting trial beginning on May 12, 2005. Although he knew he was not guilty, plaintiff also knew that he could not prove that the officers were lying. As a result, he pled guilty on July 8, 2005, and received a sentence to the Cook County Department of Corrections Boot Camp. He remained in custody for a total of six months.

On June 18, 2004, plaintiff was arrested by defendants Mohammed, Jones, Edwards, Young, Rodriguez, Summers, Ridgell, and Watts inside a building at the Wells Homes. At the time of the arrest none of the officers had a warrant or any reason to believe that plaintiff had committed a crime. After the arrest, the officers again concocted a false story to justify their actions, again claiming that they saw plaintiff with a clear plastic bag containing drugs. They also created false police reports which were formally approved by Watts, and communicated their false story to prosecutors. Thirteen days later, plaintiff filed a formal complaint to the CPD about defendants' actions. Defendants Mohammed, Edwards, and Jones made false statements to the investigator leading again to a "not sustained" finding.

Plaintiff was charged with possession of a controlled substance and was confined on May 12, 2005, awaiting trial. This detention was concurrent with the detention for the March 3, 2004, arrest. Again, on July 8, 2005, even though he was innocent, plaintiff pled guilty because he knew that he could not prove that the defendants were lying. As a result he was sentenced to a period at the Cook County Department of Corrections Boot Camp, concurrent with his sentence arising from the March 3, 2004 arrest.

On May 19, 2006, plaintiff was returning to his apartment in the Wells Homes after purchasing a sandwich in another apartment. When he got to his apartment, he found defendant

Jones leaving, having illegally entered and searched the apartment. Jones handcuffed plaintiff, walked him into the hallway where he met defendant Mohammed, and both took plaintiff down the stairs to the first floor. There, they met some of the other individual defendant officers, including Young and Smith. While plaintiff sat on the stairs, the defendants arrested Sandra Berry, whom plaintiff did not know. The officers took plaintiff and Berry to the police station and charged plaintiff with possession and sale of drugs. At the time of the arrest, none of the defendants had a warrant and none had any reason to believe that plaintiff had been selling drugs. The officers again created a false story, including that they had seen plaintiff sell drugs to Berry and that they had found drugs on his person.

Plaintiff was charged with possession and sale of drugs and was confined continuously awaiting trial. At the trial, defendants Smith and Jones testified falsely, leading a jury to convict plaintiff on February 1, 2007. He was sentenced to a nine year term of imprisonment. He remained in custody until January 21, 2010, when he was released on parole.

Defendants Watts and Mohammed were charged criminally in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer. Mohammed pled guilty in 2012. Watts pled guilty in 2013.

After learning that federal prosecutors and lawyers for other wrongly convicted individuals had uncovered evidence of the Watts' Gang "criminal enterprise," plaintiff challenged his convictions. On July 10, 2017, the Circuit Court of Cook County granted the state's motion to set aside all three convictions, and then granted the state's motion to <u>nolle prosequi</u> the cases. On September 14, 2017, the Circuit Court of Cook County granted plaintiff a certificate of innocence in all three cases.

4

**DISCUSSION**

Defendants have moved to dismiss the entire complaint for failure to state a claim. Such a motion challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. Sprint Spectrum, L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must allege sufficient facts, that if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555 (2007). To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. at 678 (2009).

Plaintiff's complaint does not separate his claims into counts and does not identify specific legal theories. It does, however, identify the specific constitutional rights at issue: the Fourth Amendment's prohibition of an arrest and detention without probable cause; and the Fourteenth Amendment's Due Process Clause. The application of the specific amendment depends on whether plaintiff asserts a claim for pre-trial (or conviction) detention, or post-trial detention. Plaintiff asserts claims for both.

**Fourth Amendment**

In Manuel v. City of Joliet, __ U.S. __, 137 S.Ct. 911, 918-19 (2017), the Supreme Court held that the Fourth Amendment right to be free from an unlawful government seizure extends to claims for unlawful pretrial detention, even after legal process begins. Plaintiff claims that he spent time in pretrial detention for all three arrests, based on the individual defendants'

falsification of evidence. Defendants do not dispute that plaintiff has legitimate Fourth Amendment claims for unlawful pretrial detention, but argue that those claims are untimely.

Section 1983 provides the mechanism by which a plaintiff can assert a claim for violations of federal (or constitutional) rights, but does not create any substantive rights. Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997). Instead, the threshold issue for the court is to "identify the specific constitutional right at issue" and then look to the common law of torts to provide the contours and prerequisites of the § 1983 claim. Manuel, 137 S.Ct. at 920. Because § 1983 does not contain a statute of limitations, the court looks to the law of the state where the injury occurs to determine the appropriate limitations period. In Illinois, the limitations period is two years. 735 ILCS 5/13-202. Plaintiff filed the instant action on October 16, 2017, meaning that his claim in untimely if it accrued before October 16, 2015.

After Manuel, any pretrial detention based on fabricated evidence is a Fourth Amendment violation that continues past the start of legal process up to trial. Manuel left open, however, the issue of when such a claim accrues, remanding to the Seventh Circuit "to decide which common law tort is most analogous to the Fourth Amendment post-legal-process pretrial detention violation, and what the elements of such a claim are, and when the claim accrues." Bolden v. City of Chicago, 2017 WL 8186995 at *6 (N.D. Ill. Dec. 12, 2017) (citing Manuel, 137 S.Ct. at 920)).

Defendants argue that the Fourth Amendment claim is most similar to a false arrest claim because both involve seizure without probable cause. Such claims accrue when "the claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 397 (2007). Under defendants' theory, the last of plaintiff's claims would have accrued on the date of the last arrest, May 19, 2006, and became time-barred on May 20, 2008.

Plaintiff counters that his claim is more akin to a claim for malicious prosecution, which accrues only when the proceedings are terminated in plaintiff's favor. See Hurlbert v. Charles, 938 N.E.2d 507, 512 (Ill. 2010). Because plaintiff's convictions were not overturned until July 2017, he argues that his Fourth Amendment claims were uncognizable until then under Heck v. Humphrey, 512 U.S. 477 (1994).

As Manuel noted, eight of the ten "courts of appeals that have recognized a Fourth Amendment claim . . . have incorporated a 'favorable termination' element and so pegged the statute of limitations to the dismissal of the criminal case." Manuel, 137 S.Ct. at 921. Because a cause of action cannot accrue before all elements have occurred, these courts have held that a Fourth Amendment pretrial detention claim does not accrue until the proceedings have terminated in the accused's favor. Id.

In addition, two district courts within this circuit that have addressed the issue after Manuel have reached the same conclusion. Bolden, 2017 WL 8186995 at *6; Powell v. City of Chicago, 2018 WL 1211576, *5 (N.D. Ill. Mar. 8, 2018). In particular, this court agrees with Judge Shah's statement in Bolden:

> Now that the Fourth Amendment is understood to apply to continued detention, even after the initiation of legal process, and since there can be no § 1983 claim that depends on questioning the validity of detention authorized by legal process until that detention is terminated in the accused's favor, it makes sense to hold that a Fourth Amendment claim of this sort does not accrue until favorable termination.

Consequently, the court concludes that plaintiff's Fourth Amendment claims are akin to a malicious prosecution claim and accrued on July 10, 2017, when the court vacated all three convictions and the state dropped all charges.

7

**Fourteenth Amendment**

Plaintiff alleges that he has "three straight forward claims that he was deprived of liberty without due process of law," because he was convicted three times based on fabricated evidence. There can be no doubt that the use of fabricated evidence to deprive a defendant of liberty violates the Fourteenth Amendment. "We have consistently held that a police officer who manufactures false evidence against the criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." Whitlock v. Brueggemann, 682 F.3d 567, 580 (7th Cir. 2012).

Defendants argue that plaintiff's due process claims based on falsification of evidence are simply recast Fourteenth Amendment malicious prosecution claims that are barred by Newsome v. McCabe, 256 F.3d 747, 749 (7th Cir. 2001), because Illinois provides an adequate remedy. The court disagrees. Putting aside the fact that Newsome's continued vitality is questionable in light of Manuel, since Newsome the Seventh Circuit has consistently upheld due process claims for fabrication of evidence. See Whitlock, 682 F.3d at 580; Stinson v. Gauger, 868 F.3d 516 (7th Cir. 2017); Avery v. City of Milwaukee, 847 F.3d 433 (7th Cir. 2017). As the Seventh Circuit recently noted, Newsome merely held that there is no "free-standing constitutional tort of malicious prosecution, though there are other constitutional rights (e.g. such as those under the Due Process Clause and the Fourth Amendment) that protect people against abusive arrests, fabrication of evidence, etc." Hurt v. Wise, 880 F.3d 831, 843 (7th Cir. 2018). Plaintiff is not asserting a free-standing federal malicious prosecution claim, but instead has "identified the constitutional right at issue, the Fourteenth Amendment's Due Process Clause," which "forbids the state from depriving a person of liberty . . . based on manufactured evidence." Id. (citing

8

Avery, 847 F.3d at 439). "The availability of a state law remedy for malicious prosecution doesn't defeat a federal due-process claim against an officer who fabricates evidence that is later used to obtain a wrongful conviction." Avery, 847 F.3d at 441. Consequently, the court concludes that plaintiff's due process claims are not barred by Newsome.

Defendants also argue that any due process claim based on the 2004 convictions are barred by plaintiff's guilty pleas in those cases. According to defendant, Avery holds that a due process claim based on fabricated evidence is viable only when the allegedly fabricated evidence was admitted against a plaintiff at trial and caused the conviction. See Avery, 847 F.3d at 442. Defendants argue that plaintiff never went to trial on the 2004 cases and his guilty plea "broke the causal chain connecting the alleged acts of fabrication to plaintiff's convictions and subsequent imprisonments." According to defendants, the pleas can be attacked only by establishing that they were not voluntary or knowing. Tollett v. Henderson, 411 U.S. 258, 267 (1973). Once again, the court disagrees.

Plaintiff alleges that the only reason he pled guilty in the two cases was because he knew he could not prove that the individual defendant officers had fabricated the evidence against him. As Whitlock held, "a police officer who manufactures false evidence against the criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way." Whitlock, 682 F.3d at 580 (emphasis added). The "due process violation – that is the liberty deprivation – caused by fabricated evidence results from its use to secure the defendant's conviction, not from its use at trial. Saunders v. City of Chicago, 2014 WL 3535723, *4 (N.D. Ill. July 11, 2014) (citing Alexander v. McKinney, 692 F.3d 553, 557 (7th Cir. 2012)). "Defendants' misconduct can be said to cause the injury insofar as it influences the criminal defendant's decision

9

to take the plea after taking stock of the lack of exculpatory evidence in his possession (complete or not) and inculpatory evidence in the government's possession (false or not)." Id. Thus, it reasonably can be said that the fabricated evidence caused plaintiff to be deprived of his liberty. Id., see also Powell, 2018 WL 1211576 at *8. Consequently, plaintiff's Fourteenth Amendment due process claims are sufficiently pled and state a claim.

**Defendants' Alternate Arguments**

Defendants argue that plaintiff's failure to intervene and conspiracy claims must be dismissed because they are derivative to his federal claims that defenddants argue must be dismissed. Because the court has sustained the underlying federal claims, it denies the motion to dismiss the failure to intervene and conspiracy claims.

Next, the individual defendant officers briefly argue that the complaint fails to allege their personal involvement. See Kitzman-Kelley v. Warner, 203 F.3d 454, 458 (7th Cir. 2000). The court disagrees. Plaintiff has identified the individual defendant officers that arrested him each time, has identified Watts as knowingly approving the false reports, and has alleged that the Watts Gang engaged in conspiracies of silence. Plaintiff further alleges that the officers that did not prepare the false reports did nothing to prevent the constitutional violations despite being aware of them. These allegations are sufficient at the pleading stage.

Defendants Cline and Kirby also argue that the complaint fails to plead a plausible basis for supervisory liability under § 1983. Supervisory officials face liability under § 1983 if they had "personal involvement in the constitutional deprivations, essentially directing or consenting to the challenged conduct." Doyle v. Camelot Care Ctrs., Inc., 305 F.3d 603, 614 (7th Cir. 2002). Supervisors cannot be held liable for negligence, but supervisors "who act (or fail to act) in

deliberate or reckless disregard of a plaintiff's constitutional rights satisfy § 1983's requirements for personal liability." Powell, 2018 WL 1211576 at *8 (citing Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000)).

In the instant case, plaintiff alleges that both Cline and Kirby, as a result of a series of civilian complaints, knew well before his first arrest that Watts and his gang, including the individual defendant officers, were engaged in a pattern of fabricating evidence against residents of the Wells Homes resulting in wrongful convictions. Plaintiff alleges that despite this knowledge both Cline and Kirby turned a blind eye to the illegal activity, resulting in plaintiff's injury. As Judge Blakey did in Powell, the court concludes that these allegations are sufficient to state a claim. Powell, 2018 WL 1211576 at *9.

Finally, the City challenges plaintiff's claim under Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978), arguing that this claim should be dismissed if the underlying constitutional claims are dismissed. Because the court has not dismissed the underlying constitutional claims, the City's motion to dismiss is denied.

## CONCLUSION

For the reasons stated above, defendants' joint motion to dismiss [Doc. 43] is denied. Defendants are ordered to answer the complaint by May 11, 2018. The parties are directed to file a joint status report, on this court's form, by May 15, 2018. The status set for April 12, 2018, is reset to May 23, 2018. at 9:10 a.m.

**ENTER:** April 10, 2018

                                                                                            *[signature: Robert W. Gettleman]*

**Robert W. Gettleman**
**United States District Judge**