**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| William Carter, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.  17 C 7241 |
| v. | ) | |
| | ) | Judge Robert Gettleman |
| City of Chicago, Ronald Watts, Phillip Cline, | ) | |
| Debra Kirby, Darryl Edwards, Alvin Jones, | ) | Magistrate Judge Maria Valdez |
| Kallatt Mohammed, John Rodriguez, Calvin | ) | |
| Ridgell, Jr., Elsworth J. Smith, Jr., Gerome | ) | |
| Summers, Jr., and Kenneth Young, Jr. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, City of Chicago ("City"), by its attorney, Terrence M. Burns of Reiter Burns LLP, for its answer to plaintiff's complaint, states:

### I.    Introduction

1.    Plaintiff William Carter is one of many victims of the criminal enterprise run by convicted felon and former Chicago Police Sergeant Ronald Watts and his tactical team at the Ida B. Wells Homes in the 2000's.

**ANSWER**:    Defendant City admits Ronald Watts is a convicted felon and former sergeant in the Chicago Police Department ("CPD").  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 1.

2.    The Watts Gang of officers engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, and manufactured false charges.

**ANSWER**:    Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang of officers," and it therefore makes no answer or response to the allegations in this

paragraph incorporating that term. Defendant City admits Defendant Watts was arrested and charged with Theft of Government Funds, and that he pleaded guilty to those charges in July 2013. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 2.

3.     High ranking officials within the Chicago Police Department were aware of the Watts Gang's criminal enterprise, but failed to take any action to stop it.

**ANSWER**:     Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City states the CPD participated with federal authorities in a joint investigation of criminal allegations made against Defendant Watts, and it therefore denies the remaining allegations contained in paragraph 3.

4.     The Chicago Police Department's official policies or customs of failing to discipline, supervise, and control its officers, as well as its a "code of silence," were a proximate cause of the Watts Gang's criminal enterprise.

**ANSWER**:     Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City denies the "official policies and customs" of the CPD alleged in this paragraph. Defendant City further denies any "official policies or customs" of the CPD were a proximate cause of Defendant Watts' criminal activities.

5.     The facts of this case provide a striking example of these official policies and customs and of the Watts Gang's criminal enterprise: Carter was falsely arrested and falsely charged by Watts and his Gang three times. Although Carter pleaded guilty to the first two false charges, he also filed formal contemporaneous complaints with the Chicago Police Department.

**ANSWER**:     Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term

"Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Based on police department documents, Defendant City admits plaintiff was arrested three times, pleaded guilty twice, and made two complaints to the CPD's Office of Professional Standards ("OPS") in 2004. Defendant City denies knowledge or information of the misconduct alleged against the individual defendants in the complaint, and it therefore denies the remaining allegations in paragraph 5, which are premised upon that alleged misconduct.

6.      In response to Carter's complaints, Watts and his Gang falsely arrested Carter a third time and again framed him for selling drugs. A jury convicted Carter based on the wrongful acts of officers in the Watts Gang and he received a nine-year sentence.

**ANSWER**:    Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City denies knowledge or information of the misconduct alleged against the individual defendants in the complaint, and it therefore denies the remaining allegations in paragraph 6, which are premised upon that alleged misconduct.

7.      As a result of these three wrongful convictions, Carter was wrongfully incarcerated for a total of more than four years between his nineteenth and twenty-fourth birthdays.

**ANSWER**:    Defendant City denies knowledge or information of the misconduct alleged against the individual defendants to support the allegations plaintiff was "wrongfully convicted" and/or "wrongfully incarcerated," and it therefore denies the allegations contained in paragraph 7.

8.      Based on the powerful evidence that has become known about the Watts Gang's nearly decade-long criminal enterprise, on July 10, 2017, the Circuit Court of Cook County granted the State's motion for a new trial and dismissed the charges against Carter in all three cases.

**ANSWER**:    Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph

incorporating that term. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 8.

9.      On September 14, 2017, the Circuit Court of Cook County granted Carter certificates of innocence in all three cases.

**ANSWER**:    Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 9.

10.      Carter brings this lawsuit to secure a remedy for his illegal incarceration, which was caused by: the Watts Gang officers, the failure of high-ranking officials within the Chicago Police Department to stop the Watts Gang, the code of silence within the Chicago Police Department, and the Chicago Police Department's defective discipline policy.

**ANSWER**:    Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant admits plaintiff's complaint seeks damages, but it denies liability to plaintiff for any of the claims and/or damages asserted in the complaint. Defendant City denies the remaining allegations contained in paragraph 10.

**II.      Parties and Jurisdiction**

11.      This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.

**ANSWER:**    Defendant City admits plaintiff's complaint purports to assert claims pursuant to federal statutes and Illinois law that seek to invoke the jurisdiction of this Court. Defendant City denies liability to plaintiff for any and all claims asserted in the complaint.

12.      Plaintiff William Carter is a resident of the Northern District of Illinois.

**ANSWER:**    Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 12.

13.      Defendant City of Chicago is an Illinois municipal corporation.

**ANSWER:** Defendant City admits it is a municipal corporation duly incorporated under the laws of the State of Illinois.

14. Defendants Ronald Watts, Darryl Edwards, Alvin Jones, Kallatt Mohammed, John Rodriguez, Calvin Ridgell, Jr., Elsworth J. Smith, Jr., Gerome Summers, Jr., and Kenneth Young, Jr., (the "individual officer defendants"), were at all relevant times acting under color of their offices as Chicago police officers. Plaintiff sues the individual officer defendants in their individual capacities.

**ANSWER:** Defendant City admits Defendants Ronald Watts, Darryl Edwards, Alvin Jones, Kallatt Mohammed, John Rodriguez, Calvin Ridgell, Jr., Elsworth J. Smith, Jr., Gerome Summers, Jr., and Kenneth Young, Jr., (collectively, the "Defendant Officers") were duly appointed and sworn Chicago police officers employed by the CPD at certain times alleged in the complaint. Defendant City admits the complaint purports to sue the individual defendant officers in their individual capacities. Defendant City denies any remaining allegations contained in paragraph 14 inconsistent with the foregoing.

15. Defendant Philip Cline was at all relevant times Superintendent of the Chicago Police Department. Plaintiff sues Cline in his individual capacity.

**ANSWER:** Defendant City admits Defendant Cline served as Superintendent of Police from approximately November 2003 to April 2007. Defendant City admits the complaint purports to sue Defendant Cline in his individual capacity. Defendant City denies the remaining allegations contained in paragraph 15 inconsistent with the foregoing.

16. Defendant Debra Kirby was at all relevant times the Assistant Deputy Superintendent of the Chicago Police Department, acting as head of the Chicago Police Department Internal Affairs Division. Plaintiff sues Kirby in her individual capacity.

**ANSWER:** Defendant City admits Defendant Kirby served as Assistant Deputy Superintendent of the CPD in charge of its Internal Affairs Division from approximately July 2004 through March 2008. Defendant City admits the complaint purports to sue Defendant Kirby in her individual capacity. Defendant City denies the remaining allegations contained in paragraph 16

inconsistent with the foregoing.

### III. The First False Arrest and Illegal Prosecution of Plaintiff

17.     On March 3, 2004, plaintiff was arrested by defendants Mohammed, Young, and Edwards (the "March 3, 2004 Arresting Officers") inside a building at the Ida B. Wells Homes.

**ANSWER:**     Based on police department reports, Defendant City admits the allegations contained in paragraph 17.

18.     At the time of plaintiff's arrest on March 3, 2004:

    a.     None of the March 3, 2004 Arresting Officers had a warrant authorizing the arrest of plaintiff;

    b.     None of the March 3, 2004 Arresting Officers believed that a warrant had been issued authorizing the arrest of plaintiff;

    c.     None of the March 3, 2004 Arresting Officers had observed plaintiff commit any offense; and

    d.     None of the March 3, 2004 Arresting Officers had received information from any source that plaintiff had committed an offense.

**ANSWER:**     Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 18(a) and 18(b). Based on police department reports, Defendant City denies the allegations contained in paragraphs 18(c) and 18(d).

19.     One or more of the March 3, 2004 Arresting Officers used excessive and unreasonable force while placing plaintiff under arrest.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations contained in paragraph 19.

20.     After arresting plaintiff, the March 3, 2004 Arresting Officers conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, and to cause plaintiff to be wrongfully detained and prosecuted.

**ANSWER:**     Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 20.

6

21. The false story fabricated by the March 3, 2004 Arresting Officers included their false claim that they had arrested plaintiff after seeing him with a clear plastic bag containing drugs.

**ANSWER:** Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 21.

22. The acts of the March 3, 2004 Arresting Officers in furtherance of their scheme to frame plaintiff included the following:

   a. One or more of the March 3, 2004 Arresting Officers prepared police reports containing the false story, and the others each failed to intervene to prevent the violation of plaintiff's rights;

   b. One or more of the March 3, 2004 Arresting Officers attested through the official police reports that they witnessed the false story, and the others each failed to intervene to prevent the violation of plaintiff's rights;

   c. Defendant Watts formally approved the official police reports, knowing that they contained the false story; and

   d. One or more of the March 3, 2004 Arresting Officers communicated the false story to prosecutors, and the others each failed to intervene to prevent the violation of plaintiff's rights.

**ANSWER:** Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 22.

23. Each of the wrongful acts of the March 3, 2004 Arresting Officers was performed with knowledge that the acts would cause plaintiff to be wrongfully held in custody and falsely prosecuted for an offense that had never occurred.

**ANSWER:** Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 23.

24. On March 8, 2004, five days after his first false arrest, plaintiff made a formal complaint to the Chicago Police Department about the wrongful acts of the March 3, 2004 Arresting Officers.

**ANSWER:** Defendant City admits plaintiff telephoned OPS on March 8, 2004 and made a complaint (which was assigned Complaint Register ("CR") No. 296355), in which he alleged Defendant Young used excessive force against him on March 3, 2004. Defendant City

7

denies the remaining allegations in paragraph 24.

25.     Defendants Mohammed, Edwards, and Young all made false statements as part of the Department's investigation into plaintiff's complaint.

**ANSWER:**     Defendant City admits Defendants Mohammed, Edwards, and Young provided To/From statements to OPS as part of the investigation in CR No. 296355. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 25.

26.     As a result of these false statements, the Department found plaintiff's complaint to be "Not Sustained."

**ANSWER:**     Defendant City admits only that the investigation in CR No. 296355 resulted in a finding of "Not Sustained." Defendant City denies knowledge or information the finding was based on statements that were "false."

27.     Plaintiff was charged with possession of a controlled substance in Case Number 04-CR-09579 as a result of the wrongful acts of the March 3, 2004 Arresting Officers.

**ANSWER:**     Based on police department reports, Defendant City admits plaintiff was charged on or around March 3, 2004 with possession of a controlled substance. Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the remaining allegations contained in paragraph 27.

28.     Plaintiff was detained before trial as a result of the wrongful acts of the March 3, 2004 Arresting Officers; this detention including being confined at the Cook County Jail beginning on May 12, 2005.

**ANSWER:**     Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph concerning plaintiff's detention. Defendant City denies knowledge or information of the misconduct alleged against the individual defendants in the complaint, and it therefore denies the allegation that plaintiff's detention resulted from "wrongful acts." Defendant City denies any remaining allegations

contained in paragraph 28.

29.     Plaintiff knew that proving that the March 3, 2004 Arresting Officers had concocted the charges against him would not be possible.

**ANSWER:**     Defendant City is without knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in paragraph 29.

30.     Accordingly, even though he was innocent, plaintiff, pleaded guilty in Case Number 04-CR-09579 on July 8, 2005, and was sentenced to the Cook County Department of Corrections Boot Camp Program.

**ANSWER:**     Defendant City admits on information and belief plaintiff pleaded guilty.

Defendant City is without knowledge or information sufficient to form a belief as to the truth or

falsity of the remaining allegations contained in paragraph 30.

31.     Plaintiff's sentence require [*sic*] him to remain in custody at the Cook County Jail for over six months.

**ANSWER:**     Defendant City is without knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in paragraph 31.

32.     As a result of the above-described wrongful acts of the March 3, 2004 Arresting Officers, plaintiff was deprived of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States while being held as a pre-trial detainee and while serving his sentence.

**ANSWER:**     Defendant City denies knowledge or information of the misconduct alleged

against the individual defendants, and it therefore denies the allegations in paragraph 32.

**IV.     The Second False Arrest and Illegal Prosecution of Plaintiff**

33.     On June 18, 2004, plaintiff was arrested by defendants Mohammed, Jones, Edwards, Young, Rodriguez, Summers, Ridgell, and Watts (the "June 18, 2004 Arresting Officers") inside a building at the Ida B. Wells Homes.

**ANSWER:**     Based on police department reports, Defendant City admits the allegations

contained in paragraph 33.

34.     At the time of plaintiff's arrest on June 18, 2004:

      a.     None of the June 18, 2004 Arresting Officers had a warrant authorizing the arrest of plaintiff;

      b.     None of the June 18, 2004 Arresting Officers believed that a warrant had been issued authorizing the arrest of plaintiff;

      c.     None of the June 18, 2004 Arresting Officers had observed plaintiff commit any offense; and

      d.     None of the June 18, 2004 Arresting Officers had received information from any source that plaintiff had committed an offense.

**ANSWER:**    Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 34(a) and 34(b). Based on police department reports, Defendant City denies the allegations contained in paragraphs 34(c) and 34(d).

35.    One or more of the June 18, 2004 Arresting Officers used excessive and unreasonable force while placing plaintiff under arrest.

**ANSWER:**    Based on police department reports, Defendant City denies the allegations contained in paragraph 35.

36.    After arresting plaintiff, the June 18, 2004 Arresting Officers conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, to retaliate against plaintiff for filing a formal complaint, and to cause plaintiff to be wrongfully detained and prosecuted.

**ANSWER:**    Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 36.

37.    The false story fabricated by the June 18, 2004 Arresting Officers included their false claim that that they had arrested plaintiff after seeing him with a clear plastic bag containing drugs.

**ANSWER:**    Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 37.

38.    The acts of the June 18, 2004 Arresting Officers in furtherance of their scheme to frame plaintiff included the following:

      a.     One or more of the June 18, 2004 Arresting Officers prepared police reports

containing the false story, and the others each failed to intervene to prevent the violation of plaintiff's rights;

b.    One or more of the June 18, 2004 Arresting Officers attested through the official police reports that they were witnesses to the false story, and the others each failed to intervene to prevent the violation of plaintiff's rights;

c.    Defendant Watts formally approved the official police reports, knowing that they contained the false story; and

d.    One or more of the June 18, 2004 Arresting Officers communicated the false story to prosecutors, and the others each failed to intervene to prevent the violation of plaintiff's rights.

**ANSWER:**    Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 38.

39.    Each of the wrongful acts of the June 18, 2004 Arresting Officers was performed with knowledge that the acts would cause plaintiff to be wrongfully held in custody and falsely prosecuted for an offense that had never occurred.

**ANSWER:**    Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 39.

40.    On July 1, 2004, thirteen days after his second false arrest, plaintiff made a formal complaint to the Chicago Police Department about the wrongful acts of the June 18, 2004 Arresting Officers.

**ANSWER:**    Defendant City admits that on July 1, 2004, plaintiff made a complaint to OPS (which was assigned CR No. 299023), in which he alleged Defendant Jones used excessive force against him on June 18, 2004. Defendant City denies the remaining allegations contained in paragraph 40.

41.    Defendants Mohammed, Edwards, and Jones all made false statements as part of the Department's investigation into plaintiff's second complaint.

**ANSWER:**    Defendant City admits Defendants Mohammed, Edwards, and Jones provided To/From statements to OPS as part of the investigation in CR No. 299023. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the

remaining allegations contained in paragraph 41.

42.     As a result of these false statements, the Department again found plaintiff's complaint to be "Not Sustained."

**ANSWER:**     Defendant City admits only that the investigation in CR No. 299023 resulted in a finding of "Not Sustained."  Defendant City denies knowledge or information the finding was based on statements that were "false."

43.     Plaintiff was charged with possession of a controlled substance in Case Number 04-CR-17677 as a result of the wrongful acts of the June 18, 2004 Arresting Officers.

**ANSWER:**     Based on police department reports, Defendant City admits plaintiff was charged on or around June 18, 2004 with possession of a controlled substance.  Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the remaining allegations contained in paragraph 43.

44.     Plaintiff was detained before trial as a result of the wrongful acts of the March 3, 2004 Arresting Officers; this detention including being confined at the Cook County Jail beginning on May 12, 2005. This detention was concurrent with plaintiff's detention awaiting trial in Case Number 04-CR-09579.

**ANSWER:**     Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph concerning plaintiff's detention.  Defendant City denies knowledge or information of the misconduct alleged against the individual defendants in the complaint, and it therefore denies the allegation that plaintiff's detention resulted from "wrongful acts."   Defendant City denies any remaining allegations contained in paragraph 44.

45.     Plaintiff knew that proving that the June 18, 2004 Arresting Officers had concocted the charges against him would not be possible.

**ANSWER:**     Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 45.

46.     Accordingly, even though he was innocent, plaintiff pleaded guilty in Case Number

04-CR-17677 on July 8, 2005, and was sentenced to the Cook County Department of Corrections Boot Camp Program. The sentence was concurrent with plaintiff's sentence in Case Number 04-CR-09579.

**ANSWER:** Defendant City admits on information and belief plaintiff pleaded guilty. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 46.

47. Plaintiff's sentence required him to remain in custody at the Cook County Jail for more than six months.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 47.

48. As a result of the above-described wrongful acts of the June 18, 2004 Arresting Officers, plaintiff was deprived of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States while being held as a pre-trial detainee and while serving his sentence.

**ANSWER:** Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 48.

**V. The Third False Arrest and Illegal Prosecution of Plaintiff**

49. In May 2006, plaintiff was living at 527 East Browning, Apartment 506 in the Ida B. Wells Homes.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 49.

50. In the evening of May 19, 2006, plaintiff returned to his apartment from another apartment (number 608) in the building.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 50.

51. Damica Nickerson lived in apartment 608 and sold food out of her apartment; plaintiff had been at Nickerson's apartment to order an Italian beef sandwich.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in paragraph 51.

52.     After ordering the sandwich, plaintiff returned to his apartment, one floor below, where he encountered Defendant Jones, who had unlawfully entered and searched the apartment.

**ANSWER:**     Based on police department reports, Defendant City admits only that

Defendant Jones encountered plaintiff on May 19, 2006, in a hallway of the building at 527 E.

Browning.  Defendant City is without knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations concerning plaintiff's ordering of a sandwich.  Based on police

department reports, Defendant City denies the remaining allegations contained in paragraph 52.

53.     Jones was leaving the apartment when plaintiff entered.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations

contained in paragraph 53.

54.     As plaintiff entered the apartment, defendant Jones told him "You're just the motherfucker I'm looking for."

**ANSWER:**     Based on police department reports, Defendant City denies the allegations

contained in paragraph 54 concerning where Defendant Jones encountered plaintiff.  Defendant

City is without knowledge or information sufficient to form a belief as to the truth or falsity of the

remaining allegations contained in paragraph 54.

55.     Defendant Jones placed plaintiff in handcuffs and walked him into the hallway where defendant Mohammed joined them.

**ANSWER:**     Based on police department reports, Defendant City admits only that

plaintiff was arrested and taken into custody by police on May 19, 2006, in the hallway of a

building at 527 E. Browning.  Based on police department reports, Defendant City denies the

complaint accurately sets forth the sequence of events that occurred on May 19, 2006, and it denies

the remaining allegations contained in paragraph 55.

56.     Defendant Jones did not have any lawful basis to handcuff plaintiff.

**ANSWER:** Based on police department reports, Defendant City denies the allegations contained in paragraph 56.

57. Defendant Mohammed knew that Defendant Jones did not have any lawful basis to handcuff plaintiff and could have, but did not, intervene to prevent the violation of plaintiff's rights.

**ANSWER:** Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 57.

58. Jones and Mohammed then walked plaintiff down the stairs to the first floor of 527 East Browning.

**ANSWER:** Based on police department reports, Defendant City admits only that plaintiff was arrested and taken into custody by police on May 19, 2006, in the hallway of a building at 527 E. Browning. Based on police department reports, Defendant City denies the complaint accurately sets forth the sequence of events that occurred on May 19, 2006, and it denies the remaining allegations contained in paragraph 58.

59. There, other members of the Watts Gang, including defendants Young and Smith, joined Jones, Mohammed, and plaintiff.

**ANSWER:** Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are directed against the named defendants, the City responds as follows. Based on police department reports, Defendant City admits only that plaintiff was arrested and taken into custody by police on May 19, 2006, in the hallway of a building at 527 E. Browning. Based on police department reports, Defendant City denies the complaint accurately sets forth the sequence of events that occurred on May 19, 2006, and it denies the remaining allegations contained in paragraph 59.

60. While plaintiff, still in handcuffs, sat on the stairs in the first-floor hallway of 527

East Browning, defendants Jones, Mohammed, Young, and Smith (the "May 19, 2006 Arresting Officers") arrested Sandra Berry.

**ANSWER:** Based on police department reports, Defendant City admits only that Sandra Berry was arrested and taken into custody by police on May 19, 2006, in the hallway of a building at 527 E. Browning. Based on police department reports, Defendant City denies the complaint accurately sets forth the sequence of events that occurred on May 19, 2006, and it denies the remaining allegations contained in paragraph 60.

61. Plaintiff had never seen Berry before and had not had any contact with her arrest.

**ANSWER:** Based on police department reports, Defendant City denies the allegations contained in paragraph 61.

62. The May 19, 2006 Arresting Officers took plaintiff and Berry to the police station, where plaintiff learned for the first time that he was being charged for possession and sale of drugs.

**ANSWER:** Based on police department reports, Defendant City admits plaintiff and Sandra Berry were taken into custody on May 19, 2006. Defendant City denies on information and belief the remaining allegations contained in paragraph 62.

63. At the time of plaintiff's arrest on May 19, 2006:

   a. None of the May 19, 2006 Arresting Officers had a warrant authorizing the arrest of plaintiff;

   b. None of the May 19, 2006 Arresting Officers believed that a warrant had been issued authorizing the arrest of plaintiff;

   c. None of the May 19, 2006 Arresting Officers had observed plaintiff commit any offense; and

   d. None of the May 19, 2006 Arresting Officers had received information from any source that plaintiff had committed an offense.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 63(a) and 63(b). Based on police department reports, Defendant City denies the allegations contained in paragraphs 63(c) and

63(d).

64.     One or more of the May 19, 2006 Arresting Officers used excessive and unreasonable force while placing plaintiff under arrest.

**ANSWER:**     Based on police department reports, Defendant City denies the allegations

contained in paragraph 64.

65.     After arresting plaintiff, the May 19, 2006 Arresting Officers conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, to retaliate against plaintiff for filing formal complaints, and to cause plaintiff to be wrongfully detained and prosecuted.

**ANSWER:**     Defendant City denies knowledge or information of the misconduct alleged

against the individual defendants, and it therefore denies the allegations in paragraph 65.

66.     The false story fabricated by the May 19, 2006 Arresting Officers included their false claim that they arrested plaintiff after seeing him sell drugs to Berry and that they then found drugs on plaintiff's person.

**ANSWER:**     Defendant City denies knowledge or information of the misconduct alleged

against the individual defendants, and it therefore denies the allegations in paragraph 66.

67.     The acts of the May 19, 2006 Arresting Officers in furtherance of their scheme to frame plaintiff included the following:

a.     One or more of the May 19, 2006 Arresting Officers prepared police reports containing the false story, and the others each failed to intervene to prevent the violation of plaintiff's rights;

b.     One or more of the May 19, 2006 Arresting Officers attested through the official police reports that they were witnesses to the false story, and the others each failed to intervene to prevent the violation of plaintiff's rights;

c.     Defendant Watts formally approved the official police reports, knowing that they contained the false story; and

d.     One or more of the May 19, 2006 Arresting Officers communicated the false story to prosecutors, and the others each failed to intervene to prevent the violation of plaintiff's rights.

**ANSWER:**     Defendant City denies knowledge or information of the misconduct alleged

against the individual defendants, and it therefore denies the allegations in paragraph 67.

68.     Each of the wrongful acts of the May 19, 2006 Arresting Officers was performed with knowledge that the acts would cause plaintiff to be wrongfully held in custody and falsely prosecuted for an offense that had never occurred.

**ANSWER:**     Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 68.

69.     Plaintiff was charged with sale and possession of a controlled substance in Case Number 06-CR-13571 of the wrongful acts of the May 19, 2006 Arresting Officers.

**ANSWER:**     Based on police department reports, Defendant City admits plaintiff was charged on or around May 19, 2006 with felony delivery of a controlled substance.  Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the remaining allegations contained in paragraph 69.

70.     Plaintiff was continuously confined awaiting trial in Case Number 06-CR-13571.

**ANSWER:**     Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 70.

71.     At trial, defendant Smith and Jones testified falsely in furtherance of the conspiracy.

**ANSWER:**     Defendant City admits on information and belief Defendants Smith and Jones testified at plaintiff's criminal trial.  Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the remaining allegations in paragraph 71.

72.     Plaintiff presented witnesses who testified to his innocence, but a jury convicted him on February 1, 2007, and he received a sentence of 9 years of imprisonment.

**ANSWER:**     Defendant City admits on information and belief witnesses testified for the defense at plaintiff's criminal trial, the jury entered a verdict of guilty against plaintiff on or around February 1, 2007, and plaintiff was sentenced to 9 years' imprisonment.  Defendant City denies any remaining allegations contained in paragraph 72 inconsistent with the foregoing.

73.     Plaintiff was continuously confined after trial until he was released on parole on

January 21, 2010.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in paragraph 73.

74.     As a result of the above-described wrongful acts of the May 19, 2006 Arresting
Officers, plaintiff was deprived of rights secured by the Fourth and Fourteenth Amendments to the
Constitution of the United States while being held as a pre-trial detainee and while serving his
sentence.

**ANSWER:** Defendant City denies knowledge or information of the misconduct alleged

against the individual defendants, and it therefore denies the allegations in paragraph 74.

**VI.    Plaintiff's Exonerations**

75.     Plaintiff challenged his convictions after he learned that federal prosecutors and
lawyers for other wrongfully convicted individuals had uncovered evidence of the Watts Gang's
criminal enterprise.

**ANSWER:** Defendant City lacks knowledge or information sufficient to form a belief

as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term

"Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph

incorporating that term. Defendant City is without knowledge or information sufficient to form a

belief as to the truth or falsity of remaining allegations contained in paragraph 75 concerning

plaintiff's alleged reasons for challenging his conviction.

76.     On July 10, 2017, the Circuit Court of Cook County granted the state's motion to
set aside plaintiff's convictions in all three cases; immediately thereafter, the Court granted the
State's request to *nolle prosequi* the case.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in paragraph 76.

77.     On September 14, 2017, the Circuit Court of Cook County granted plaintiff
certificates of innocence in all three cases.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in paragraph 77.

**VII.    Plaintiff's Arrest and Prosecution Were Part of a Long-Running Pattern Known to High Ranking Officials within the Chicago Police Department**

78.    Before the Watts Gang engineered plaintiff's above-described wrongful arrests, detentions, and prosecutions, the Chicago Police Department had received numerous civilian complaints that defendant Watts and the Watts Gang were engaging in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph to the extent based on that term.  To the extent the allegations of this paragraph are directed against the named defendants, Defendant City admits that in 2004, the CPD received information alleging Defendant Watts was engaging in criminal misconduct against persons at the Ida B. Wells housing complex.  Defendant City denies any remaining allegations in paragraph 78 inconsistent with the foregoing.

79.    Criminal investigators corroborated these civilian complaints with information they obtained from multiple cooperating witnesses.

**ANSWER:**    Defendant City admits investigators obtained statements from certain cooperating witnesses alleging Defendant Watts was engaging in criminal misconduct against persons at the Ida B. Wells housing complex.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 79.

80.    Before the Watts Gang engineered plaintiff's above-described wrongful arrests, detentions, and prosecutions, defendants Cline and Kirby knew about the above-described credible allegations of serious wrongdoing by Watts and the Watts Gang and knew that criminal investigators had corroborated these allegations.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term

"Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are directed against the named defendants, Defendant City admits the CPD received information as of September 2004 alleging Defendant Watts was engaging in criminal misconduct against individuals at the Ida B. Wells housing complex, and that CPD's Internal Affairs Department participated with federal authorities in a joint investigation of those allegations. Defendant City denies any remaining allegations contained in paragraph 80 inconsistent with the foregoing.

81. Defendants Cline and Kirby also knew, before the Watts Gang engineered plaintiff's above-described wrongful arrests, detentions, and prosecutions, that, absent intervention by the Chicago Police Department, Watts and his gang would continue to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges.

**ANSWER:** Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are directed against the named defendants, Defendant City admits the CPD received information as of September 2004 alleging Defendant Watts was engaging in criminal misconduct against individuals at the Ida B. Wells housing complex, and that CPD's Internal Affairs Department participated with federal authorities in a joint investigation of those allegations. Defendant City denies any remaining allegations contained in paragraph 81 inconsistent with the foregoing.

82. The Internal Affairs Division of the Chicago Police knew about the lawlessness of Watts and his gang by 2004.

**ANSWER:** Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph to the extent based on that term. To the extent the allegations of this paragraph are

21

directed against the named defendants, Defendant City admits the CPD received information alleging Defendant Watts was engaging in criminal misconduct against individuals at the Ida B. Wells housing complex, and that CPD's Internal Affairs Department was participating with federal authorities in 2004 in a joint investigation of those allegations. Defendant City denies any remaining allegations in paragraph 82 inconsistent with the foregoing.

83. Defendants Cline and Kirby had the power and the opportunity to prevent Watts and his gang from continuing to engage in the above-described wrongdoing.

**ANSWER:** Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph to the extent based on that term. Defendant City denies the remaining allegations of paragraph 83 as phrased.

84. Defendants Cline and Kirby deliberately chose to turn a blind eye to the pattern of wrongdoing by Watts and his gang.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City denies the remaining allegations contained in paragraph 84.

85. As a direct and proximate result of the deliberate indifference of defendants Cline and Kirby, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiff, as described above.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this

22

paragraph to the extent based on that term. Defendant City denies the remaining allegations contained in paragraph 85.

### VIII. Official Policies and Customs of the Chicago Police Department Were the Moving Force behind the Defendants' Misconduct

86.      At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated and condoned the Defendants' misconduct.

**ANSWER**:      Defendant City denies the allegations contained in paragraph 86.

### A. Failure to Discipline

87.      At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

**ANSWER**:      Defendant City denies the allegations contained in paragraph 87.

88.      Before plaintiff's arrests, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

**ANSWER**:      Defendant City denies the allegations contained in paragraph 88.

89.      Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

**ANSWER**:      Defendant City denies it had "failed policies and customs for disciplining, supervising, and controlling its officers," and it therefore denies the allegations of paragraph 89, which are premised upon that assertion.

90.      Before the Watts Gang engineered plaintiff's above-described wrongful arrests, detentions, and prosecutions, all of the individual officer defendants had been the subject of formal complaints of official misconduct.

**ANSWER**:      Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph to

23

the extent based upon that term. Defendant City admits on information and belief each of the individual defendants was the subject of complaints alleging misconduct against them as police officers. Defendant City denies a complaint alleging misconduct that results in the opening of a Complaint Register investigation constitutes evidence the alleged misconduct occurred. Defendant City denies any remaining allegations or inferences contained in paragraph 90 inconsistent with the foregoing.

91.     Defendants Watts, Jones, and Young had each been the subject of more than fifteen formal complaints of official misconduct.

**ANSWER**:     Defendant City admits on information and belief Defendants Watts, Jones, and Young each was the subject of ten or more complaints alleging misconduct against them as police officers. Defendant City denies a complaint alleging misconduct that results in the opening of a Complaint Register investigation constitutes evidence the alleged misconduct occurred. Defendant City denies any remaining allegations or inferences contained in paragraph 91 inconsistent with the foregoing.

92.     As a direct and proximate result of the Chicago Police Department's inadequate policies or customs for disciplining, supervising, and controlling its officers and the policymakers' failure to address these problems, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiff, as described above.

**ANSWER**:     Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph to the extent based upon that term. In further response, Defendant City denies the allegations contained in paragraph 92.

**B.  Code of Silence**

93.     At all relevant times, the Chicago Police Department maintained a "code of silence"

that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

**ANSWER**:     The City denies the allegations of paragraph 93 as phrased.  The City further states any "code of silence" is directly contrary to the official written rules, policies, and training of the CPD.

94.     At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER**:     Defendant City denies the allegations contained in paragraph 94, and further states any "code of silence" is directly contrary to the official written rules, policies, and training of the CPD.

95.     This "code of silence" facilitated, encouraged, and enabled the individual officer defendants to engage in egregious misconduct for many years, knowing that their fellow officers would cover for them and help conceal their widespread wrongdoing.

**ANSWER**:     Defendant City denies the allegations contained in paragraph 95.

96.     Consistent with this "code of silence," the few people within the Chicago Police Department who stood up to Watts and his gang or who attempted to report their misconduct were either ignored or punished, and the Watts Gang was thereby able to engage in misconduct with impunity.

**ANSWER**:     Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph to the extent based upon that term.  Defendant City denies the remaining allegations contained in paragraph 96.

97.     Watts and his gang are not the first Chicago police officers whom the City of Chicago allowed to abuse citizens with impunity while the City turned a blind eye.

**ANSWER**:    Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph to the extent based upon that term.  Defendant City denies the remaining allegations contained in paragraph 97.

98.    One example of this widespread practice is Chicago police officer Jerome Finnigan, who was convicted and sentenced on federal criminal charges in 2011. One of the charges against Finnigan involved his attempt to hire a hitman to kill a police officer whom Finnigan believed would be a witness against him.

**ANSWER**:    Defendant City admits former police officer Jerome Finnigan was convicted and sentenced on criminal charges in 2011, and admits on information and belief one of the charges against Finnigan was based on his alleged attempt to hire someone to kill a police officer whom Finnigan understood might be a potential witness against him in criminal proceedings.  Defendant City denies the allegation it "turned a blind eye" to Finnigan's misconduct or had a "widespread practice" of turning a blind eye to police officer misconduct.  Defendant City denies the remaining allegations contained in paragraph 98.

99.    Finnigan was part of a group of officers in the Defendant City's Special Operations Section who carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

**ANSWER**:    Defendant City admits Jerome Finnigan and other members of the CPD's Special Operations Section were convicted of various criminal charges.  Defendant City denies any remaining allegations contained in paragraph 99 inconsistent with the foregoing.

100.    Finnigan and his crew engaged in their misconduct at around the same time that plaintiff was subjected to the abuses described above.

**ANSWER**:    Defendant City lacks knowledge or information sufficient to form a belief as to identities of the individuals plaintiff alleges to be part of Finnigan's "crew."  Defendant City denies the remaining allegations contained in paragraph 100.

101.     Finnigan, like the defendants in this case, had been the subject of many formal complaints of misconduct.

**ANSWER**:     Defendant City is without knowledge or information sufficient to form a belief as to the meaning of the vague and argumentative term "many."   In further response, Defendant City admits only that the Defendants Officers, as well as Finnigan, had been the subjects of complaints of misconduct over the course of their careers.   Defendant City denies a complaint alleging misconduct that results in the opening of a Complaint Register investigation constitutes evidence that the alleged misconduct occurred.   Defendant City denies any remaining allegations or inferences contained in paragraph 101 inconsistent with the foregoing.

102.     Finnigan revealed at his criminal sentencing hearing in 2011, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER**:     Defendant City admits on information and belief Finnigan made the statement attributed to him in this paragraph at his criminal sentencing hearing in 2011.   Defendant City denies knowledge or information of the truth or falsity of the statement made by Finnigan, and it therefore denies the remaining allegations contained in paragraph 102.

103.     Defendants Watts and Mohammed were criminally charged in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer.

**ANSWER**:     Defendant City admits the allegations contained in paragraph 103.

104.     Defendant Mohammed pleaded guilty in 2012.

**ANSWER**:     Defendant City admits the allegations contained in paragraph 104.

105.     Defendant Watts pleaded guilty in 2013.

**ANSWER**:     Defendant City admits the allegations contained in paragraph 105.

106.     In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER**: Defendant City admits the jury entered a verdict against it on a *Monell* claim in *Obrycka v. City of Chicago, et al.*, Case No. 07 C 2372, but states that the District Court in *Obrycka* subsequently noted the basis for the jury's verdict was "unclear" and was "based on the unique facts of [that] case." Defendant City denies the *Obrycka* case is applicable to the facts and circumstances alleged in plaintiff's complaint.

107. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

**ANSWER**: The City admits that on December 9, 2015, Mayor Rahm Emanuel stated, in part, the following: "This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny, or in some instances cover up the bad actions of a colleague or colleagues." The City denies any "code of silence" within the CPD is a pervasive, widespread, and well-settled custom or practice to which the City's chief policymakers have been deliberately indifferent. The City further states any "code of silence" is directly contrary to the official written rules, policies, and training of the CPD. Defendant City denies any remaining allegations contained in paragraph 107 inconsistent with the foregoing.

108. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

**ANSWER**: Defendant City admits the quoted phrase in paragraph 108 is contained within the April 2016 report issued by the Police Accountability Task Force. Defendant City denies this phrase is applicable to the facts and circumstances alleged in plaintiff's complaint. The City further states any "code of silence" is directly contrary to the official written rules, policies, and training of the CPD.

109. In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members

know it."

**ANSWER**:    Defendant City admits the quoted phrase in paragraph 109 is contained within the January 2017 Department of Justice Report entitled "Investigation of the Chicago Police Department."   Defendant City denies this phrase is applicable to the facts and circumstances alleged in plaintiff's complaint.  The City further states any "code of silence" is directly contrary to the official written rules, policies, and training of the CPD.

110.    The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, the Task Force, and the Department of Justice was also in place when plaintiff suffered the wrongful arrests, detentions, and prosecutions described above.

**ANSWER**:    Defendant City denies the allegations contained in paragraph 110.

111.    As a direct and proximate result of the City's code of silence, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiff, as described above.

**ANSWER**:    Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph to the extent based upon that term.   In further response, Defendant City denies the allegations contained in paragraph 111.

**IX.    Claims**

112.    As a result of the foregoing, all of the defendants caused plaintiff to be deprived of rights secured by the Fourth and Fourteenth Amendments.

**ANSWER**:    Defendant City makes no answer or response to the allegations of paragraph 112 to the extent directed against other defendants.  As directed against it, Defendant City denies the allegations contained in paragraph 112.

113.    As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiff was subjected to three malicious prosecutions under Illinois law.

**ANSWER**:    Defendant City denies the allegations contained in paragraph 113.

114.    Plaintiff hereby demands trial by jury.

**ANSWER**:    Defendant City admits plaintiff's complaint includes a jury demand.

## AFFIRMATIVE DEFENSES

Defendant, City of Chicago, without prejudice to its denials and all other statements in its answer and elsewhere, for its affirmative defenses to plaintiff's complaint, states:

1.    To the extent any individual employees of the City of Chicago or its police department are not liable as alleged in the complaint, the City would not be liable.  745 ILCS 10/2-109.

2.    Defendant City is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

3.    Under the Illinois Tort Immunity Act, defendants are not liable under state law for any injury caused by the act or omission of another person.  745 ILCS 10/2-204.

4.    Plaintiff's claims in the complaint are barred by the applicable statutes of limitations.

5.    Plaintiff's claims in the complaint are barred by the doctrines of *res judicata* and collateral estoppel.

6.    The City of Chicago is immune from the imposition of punitive damages under both state and federal law.  Punitive damages cannot be imposed against a municipality in a §1983 action.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages on behalf of an employee.  745 ILCS 10/2-102.

7.      As to plaintiff's state law claims, Defendant City is not liable to pay attorney's fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party.'" *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

8.      To the extent any injuries or damages claimed by plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of plaintiff as reflected in the public record, including but not limited to police reports and/or his guilty pleas, any verdict or judgment obtained by plaintiff must be reduced by an amount commensurate with the degree of fault attributed to plaintiff by the jury in this case.

9.      To the extent plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by plaintiff must be reduced by application of the principle a plaintiff has a duty to mitigate his or her damages.

## JURY DEMAND

Defendant City of Chicago respectfully requests a trial by jury.

Dated:  May 16, 2018                                      Respectfully submitted,

                                                         s/ Paul A. Michalik
                                                         One of the Attorneys for Defendant,
                                                         CITY OF CHICAGO

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Elizabeth A. Ekl
Reiter Burns LLP
311 South Wacker Dr., Suite 5200
Chicago, Illinois 60606
312.982-0090
312.429-0644 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **May 16, 2018**, I electronically filed the foregoing **Defendant City of Chicago's Answer to Plaintiff's Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

| | |
|---|---|
| ***Attorneys for Plaintiff*** | ***Attorneys for Defendant Ronald Watts*** |
| Kenneth N Flaxman | Brian P. Gainer |
| Joel A. Flaxman | Monica Gutowski |
| Kenneth N. Flaxman, P.C. | Kevin Pacini |
| 200 South Michigan Avenue | Johnson & Bell |
| Suite 201 | 33 W. Monroe St., Suite 2700 |
| Chicago, IL 60604-6107 | Chicago, IL 60603 |
| (312) 427-3200 | (312) 372-0770 |
| knf@kenlaw.com | gainerb@jbltd.com |
| jaf@kenlaw.com | gutowskim@jbltd.com |
| | pacinik@jbltd.com |

| | |
|---|---|
| ***Attorneys for Defendant Kallatt Mohammed*** | ***Attorneys for Defendant Officers Darryl Edwards, Alvin Jones, Calvin Ridgell Jr., John Rodriguez, Elsworth J. Smith, Jr., Gerome Summers, and Kenneth Young, Jr*** |
| Eric S. Palles | |
| Gary Ravitz | |
| Emily Farr | |
| Ravitz & Palles | Andrew M. Hale |
| 203 N. LaSalle St., Suite 2100 | Amy Hijjawi |
| Chicago, IL 60601 | Brian Stefanich |
| (312) 558-1689 | Jennifer Bitoy |
| epalles@ravitzpalles.com | Mohammed Khan |
| gravitz@ravitzpalles.com | Hale Law LLC |
| efarr@ravitzpalles.com | 53 W. Jackson Blvd., Suite 330 |
| | Chicago, IL 60604 |
| | 312-341-9646 |
| | 312-341-9656 (fax) |
| | ahale@ahalelaw.com |
| | ahijjawi@ahalelaw.com |
| | bstefanich@ahalelaw.com |
| | jbitoy@halelaw.com |
| | mkhan@ahalelaw.com |

s/ Paul A. Michalik