IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

William Carter,                    )
                    *Plaintiff,*   )
                                   )    No. 17-cv-7241
          *-vs-*                   )
                                   )    *(Judge Hunt)*
City of Chicago, et al.,           )
                                   )
                    *Defendants.*  )

## PLAINTIFF'S RESPONSE TO OFFICER DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Joel A. Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
200 S Michigan Ave Ste 201
Chicago, IL 60604-2430
(312) 427-3200
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I. Summary Judgment Standard ....................................................... 1

II. Relevant Facts ......................................................................... 2

III. Plaintiff's Claims ...................................................................... 6

IV. Defendants Agree that Trial is Required on Plain-
tiff's Due Process Claim About his 2006 Prosecu-
tion ........................................................................................ 7

V. The Court Should Reject Defendants' Other Ar-
gument About Personal Involvement ..................................... 10

VI. Plaintiff's Claims About His 2004 Arrests Are Not
Barred by His Vacated Guilty Pleas ...................................... 14

VII. Plaintiff's Due Process Claims About His 2004 Arrests
Are Not Barred Because There Was No Trial ......................... 21

VIII. Meritless Fourth Amendment Arguments .............................. 25

    A. Plaintiff's Fourth Amendment Claim is
Timely ............................................................................ 25

    B. Plaintiff Satisfied the Custody Element for
His Fourth Amendment Claims ....................................... 28

IX. Defendants Are Not Entitled to Qualified Immunity ............. 30

X. Conspiracy ............................................................................ 33

XI. Conclusion ............................................................................ 34

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................................2

*Armstrong v. Daily*, 786 F.3d 529 (7th Cir. 2015) ...............................23, 30, 31

*Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017). ................................................................9, 23, 24

*Baker v. City of Chicago*, 483 F.Supp. 3d 543 (N.D. Ill. 2020). .......................................................................21

*Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073 (7th Cir. 1992) .................................................................7

*Bianchi v. McQueen*, 818 F.3d 309 (7th Cir. 2016) ...........................................32

*Bontkowski v. United States*, 28 F.3d. 36 (7th Cir. 1994) ................................................................................20

*Boyd v. City of Chicago*, 225 F. Supp. 3d 708 (N.D. Ill. 2016); ....................................................................23

*Brady v. United States*, 397 U.S. 742 (1970 ....................................................17

*Brown v. City of Chicago*, 633 F. Supp. 3d 1122 (N.D. Ill. 2022) ........................................................................23

*Cairel v. Alderden*, 821 F.3d 823 (7th Cir. 2016) ............................................20

*Carter v. City of Chicago*, No. 17 C 7241, 2018 WL 1726421 (N.D. Ill. Apr. 10, 2018). ....................................1, 15, 21, 33

*Cherry v. Washington County*, 526 F. App'x 683 (7th Cir. 2013) ......................................................................8, 11

*Coleman v. City of Peoria*, 925 F.3d 336 (7th Cir. 2019) ..................................................................................13

*Driebel v. City of Milwaukee*, 298 F.3d 622 (7th Cir. 2002). ..........................32

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) .....................................24, 30

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ..............................................................32

*Givens v. City of Chicago*, 2023 IL 127837, 234 N.E.3d 22 (2023.) ......................................................................19

*Gray v. Burke*, 466 F.Supp.2d 991 (N.D. Ill. 2006); ........................................................................................20

*Gribben v. Vill. of Summit*, No. 08 C 0123, 2011
WL 289420 (N.D. Ill. Jan. 26, 2011). ....................................20

*Haring v. Prosise*, 462 U.S. 306 (1983)...........................14, 16-18, 30

*Heck v. Humphrey*, 512 U.S. 477 (1994) ...............................27

*Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192 (7th
Cir. 1987) ....................................................................17

*HK Sys., Inc. v. Eaton Corp.*, 553 F.3d 1086 (7th
Cir. 2009). ....................................................................16

*Hurlow v. United States*, 726 F.3d 958 (7th Cir.
2013) ...........................................................................17

*In re Watts Coordinated Pretrial Proceedings*,
19-cv-1717, 2022 WL 9468206 (N.D. Ill.
Oct. 14, 2022); ........................................................21, 22

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015).....................31

*Kingsley v. Hendrickson*, 801 F.3d 828 (7th Cir.
2015) ...........................................................................31

*LaSalle Bank Lake View v. Seguban*, 54 F.3d 387
(7th Cir. 1995); ................................................................8

*Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir.
2019). ..........................................................................24

*M.G. Skinner & Assocs. Ins. Agency, Inc. v. Nor-
man-Spencer Agency, Inc.*, 845 F.3d 313
(7th Cir. 2017) ................................................................16

*Manuel v. Joliet*, 580 U.S. 357 (2017). .................................26

*McMann v. Richardson*, 397 U.S. 759 (1970).........................17

*Mendoza v. City of Chicago*, 23-cv-2441, 2024
WL 1521450 (N.D. Ill. Apr. 8, 2024) .............................21

*Miller v. Smith*, 220 F.3d 491 (7th Cir. 2000);......................9

*Mooney v. Holohan*, 294 U.S. 103 (1935). ...........................31

*Moore v. Burge*, 771 F.3d 444 (7th Cir. 2014)......................28

*Moran v. Calumet City*, 54 F.4th 483 (7th Cir.
2022) ......................................................................13, 24

*Ollins v. O'Brien*, 03 C 5795, 2005 WL 730987
(N.D. Ill. Mar. 28, 2005). ............................................................21

*Padilla v. City of Chicago*, 932 F. Supp. 2d 907
(N.D. Ill. 2013) ....................................................................8, 11

*Parker v. North Carolina*, 397 U.S. 790 (1970) .................................17

*Patrick v. Chicago*, 974 F.3d 824 (7th Cir. 2020) ...................22, 24, 29

*People v. Washington*, 2023 IL 127952, 226
N.E.3d 1218 (2023) ...................................................................19

*Powell v. City of Chicago*, 17-cv-5156, 2018 WL
1211576 (N.D. Ill. Mar. 8, 2018) ..................................................21

*Runkel v. City of Springfield*, 51 F.4th 736 (7th
Cir. 2022) ..................................................................................1

*Sanchez v. City of Chicago*, 700 F.3d 919 (7th Cir.
2012). .........................................................................................9

*Santamarina v. Sears, Roebuck & Co.*, 466 F.3d
570 (7th Cir. 2006). ...................................................................16

*Saunders v. City of Chicago*, 12-cv-09158, 2014
WL 3535723, (N.D. Ill. July 11, 2014) .........................................21

*Serrano v. Guevara*, 315 F. Supp. 3d 1026 (N.D.
Ill. 2018) ..................................................................................32

*Smith v. Chicago*, 142 S. Ct. 1665 (2022)......................................26

*Smith v. Chicago*, 3 F.4th 332 (7th Cir. 2021), ...........................26, 27

*Smith v. Chicago*, 2022 WL 2752603 (7th Cir.
2022), as amended on denial of rehearing,
2022 WL 19572962 .................................................................. 26

*Sornberger v. City of Knoxville*, 434 F.3d 1006
(7th Cir. 2006), .........................................................................19

*Starks v. City of Waukegan*, 123 F. Supp. 3d 1036
(N.D. Ill. 2015) .........................................................................23

*Stolarczyk ex rel. Est. of Stolarczyk v. Senator
Int'l Freight Forwarding, LLC*, 376 F.
Supp. 2d 834 (N.D. Ill. 2005). ....................................................14

*Thompson v. Clark*, 596 U.S. 36 (2022)......................................25, 30

*Thompson v. Mueller*, 976 F. Supp. 762 (N.D. Ill. 1997) ...........................................................................19

*Tollett v. Henderson*, 411 U.S. 258 (1973)...........................17

*Ulmer v. Avila, No. 15 CV 3659*, 2016 WL 3671449 (N.D. Ill. July 11, 2016)................................23

*Walker v. White*, No. 16 CV 7024, 2021 WL 1058096 (N.D. Ill. Mar. 19, 2021),........................12

*Wallace v. City of Chicago*, 472 F. Supp. 2d 942 (N.D. Ill. 2004) ...............................................20

*White v. City of Chicago*, 17-cv-02877, 2018 WL 1702950 (N.D. Ill. Mar. 31, 2018)....................22, 31

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012). " .........................................................22

*Wilson v. Smith*, No. 22 C 04413, 2024 WL 4753670 (N.D. Ill. Nov. 12, 2024)......................25, 28

*Wisconsin Mut. Ins. Co. v. United States*, 441 F.3d 502 (7th Cir. 2006). .................................29

*Zall v. Standard Ins. Co.*, 58 F.4th 284 (7th Cir. 2023) ...................................................................7

*Zolicoffer v. City of Chicago*, No. 11 C 6362, 2013 WL 1181501 (N.D.Ill. 2013). ............................20

Plaintiff William Carter was subjected to three wrongful convictions by a corrupt gang of Chicago police officers. Plaintiff brought this lawsuit after his convictions were vacated and he was certified innocent. He brings constitutional claims against nine individual officer defendants as well as constitutional and a state law claim against defendant City of Chicago.

Defendants Edwards, Jones, Ridgell, John Rodriguez, Elsworth Smith, Summers, and Young have filed a lengthy summary judgment motion (ECF No. 194) raising a variety of meritless legal theories, including theories that the Court rejected when defendants raised them in a motion to dismiss. *Carter v. City of Chicago*, No. 17 C 7241, 2018 WL 1726421 (N.D. Ill. Apr. 10, 2018). In separate filings, defendants Mohammed and Watts have joined portions of the other individual defendants' summary judgment motion. (ECF Nos. 196, 197, 209.)

Plaintiff shows below that the Court should deny summary judgment to the individual officer defendants.

## I.    Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff, as the non-moving party, is entitled to "the benefit of conflicting evidence and any favorable inferences that might be reasonably drawn from the evidence." *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022). The Court does not weigh the evidence,

determine credibility, or make even "legitimate inferences" in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II.    Relevant Facts

The facts material to plaintiff's claims, viewing the record in the light most favorable to plaintiff, are as follows:

Plaintiff was arrested on March 3, 2004 based on a false claim that police caught him selling drugs. (Additional Facts in Response to Officers' Motions ¶¶ 1, 36.) Defendants Mohammed and Kenneth Young were the arresting officers. (Defendant Officers' Rule 56.1 Statement ¶ 9, ECF No. 195.) During the arrest, defendant Young pushed plaintiff's head into a wall. (Additional Facts in Response to Officers' Motions ¶ 2.) Defendant Darryl Edwards and defendant Kallatt Mohammed were present during the arrest, and Edwards assisted in the arrest. (*Id.* ¶¶ 3; 7.) Plaintiff made a complaint of misconduct regarding his arrest on March 3, 2004, but the Chicago Police Department did not sustain the complaint. (*Id.* ¶ 5.)

On March 3, 2004, defendant Mohammed signed a Complaint for Preliminary Examination charging Plaintiff with unlawful possession of a controlled substance in violation of 720 ILCS 520/402. (Additional Facts in Response to Officers' Motions ¶ 9.) Plaintiff spent the night in the lockup at the police station following his arrest on March 3, 2004. (*Id.* ¶ 10.) Plaintiff was transported to court in the early morning hours on March 4, 2004. (*Id.* ¶ 11.) Plaintiff remained in custody while he waited in a lockup at the courthouse for

several hours before his bond hearing. (*Id.* ¶ 12.) After plaintiff saw the judge, he received a bond that allowed him to go home, but he remained in custody and was not free to leave for several hours. (*Id.* ¶ 13.) On April 13, 2004, defendant Mohammed testified to the false police story before a grand jury that returned an indictment charging plaintiff with possession of a controlled substance with intent to deliver in 04-CR-9579. (*Id.* ¶¶ 14-15.)

On June 18, 2004, plaintiff was again arrested based on a false claim that police caught him selling drugs. (Additional Facts in Response to Officers' Motions ¶¶ 1, 37.) Defendants Jones and Edwards were the arresting officers. (Defendant Officers' Rule 56.1 Statement ¶ 29, ECF No. 195.) During this arrest, defendant Jones punched plaintiff on the right jaw. (Additional Facts in Response to Officers' Motions ¶ 16.) Defendant Darryl Edwards and defendant Mohammed were present during this arrest, and defendant Mohammed was involved in the arrest. (*Id.* ¶¶ 17, 20.) Plaintiff made a complaint of misconduct regarding his arrest on June 18, 2004, but the Chicago Police Department did not sustain the complaint. (*Id.* ¶ 18.)

Defendant Jones prepared a Chicago Police Department Vice Case Report about the June 18, 2004 arrest of plaintiff. (Additional Facts in Response to Officers' Motions ¶ 22.) The Vice Case Report lists the following defendants as "WITNESSED" in Box 18: Edwards, Young, John Rodriguez, Mohammed, Calvin Ridgell, and Ronald Watts. (*Id.* ¶ 23.) When Jones checked

"WITNESSED" in Box 18 of a Vice Case Report, he meant that the officers listed witnessed some portion of the arrest. (*Id.* ¶ 24.)

On June 18, 2004, Jones gave permission to another police officer to sign his name on a Complaint for Preliminary Examination charging plaintiff with unlawful possession of a controlled substance in violation of 720 ILCS 520/402. (Additional Facts in Response to Officers' Motions ¶ 26.) It was a normal practice for an officer to sign another officer's name on a criminal complaint. (*Id.* ¶ 27.)

Plaintiff spent the night in the lockup at the police station following his arrest on June 18, 2004 (Additional Facts in Response to Officers' Motions ¶ 28.) Plaintiff was transported to court in the early morning hours on June 19, 2004. (*Id.* ¶ 29.) Plaintiff remained in custody while he waited in a lockup at the courthouse for several hours before his bond hearing. (*Id.* ¶ 30.) After plaintiff saw the judge, he received a bond that allowed him to go home, but he remained in custody and was not free to leave for several hours. (*Id.* ¶ 31.) On June 18, 2004, defendant Jones testified to the false police story at a preliminary hearing. (*Id.* ¶¶ 32-33.)

On December 16, 2004, Plaintiff pleaded guilty to the criminal charges arising out of his arrests on March 3, 2004 (Case No. 04-CR-9579) and June 18, 2004 (Case No. 04-CR-17677). (Additional Facts in Response to Officers' Motions ¶ 34.) At the guilty plea hearing, plaintiff's attorney stipulated to the

facts asserted in the arrest report for each arrest as providing a factual basis for the convictions and the judge found those facts sufficient for the offenses as charged. (*Id.* ¶ 35.) The arrest reports contained the false story that police caught plaintiff selling drugs. (*Id.* ¶¶ 36-37.)

On February 16, 2005, plaintiff pleaded guilty to a charge of misdemeanor domestic battery, 720-5/12-3.2(a)(1), and he was sentenced to probation. (Additional Facts in Response to Officers' Motions ¶ 38.) On April 6, 2005, the State filed a petition for violation probation in Case Nos. 04-CR-9579 and 04-CR-17677, which was based in part on plaintiff's guilty plea to the charge of misdemeanor domestic battery. (*Id.* ¶ 39.) On July 8, 2005, plaintiff was re-sentenced to Cook County Department of Corrections Boot Camp because he violated his probation. (*Id.* ¶ 40.) Plaintiff was in custody at the Cook County Jail from the time of his arrest on May 12, 2005 until July 8, 2005. (*Id.* ¶ 41.) Plaintiff's sentence to Boot Camp included a period of between 124 and 180 days in custody in the Boot Camp facility. (*Id.* ¶ 42.)

Plaintiff was falsely arrested for a drug offense again on May 19, 2006 the first and second arresting officers on the arrest report are defendant Smith and defendant Jones. (Additional Facts in Response to Officers' Motion ¶¶ 1, 43, 44.) Defendants Young and Mohammed were involved in the arrest. (*Id.* ¶ 45.) Plaintiff made a complaint of misconduct regarding his arrest, but the

Chicago Police Department found the complaint unfounded without any investigation. (*Id.* ¶ 46.)

Plaintiff challenged the charges stemming from his May 19, 2006 arrest at trial, and a jury found him guilty on February 1, 2007, and he was sentenced to nine years in the Illinois Department of Corrections, with credit for 292 days of pretrial credit. (Defendant Officers' Rule 56.1 Statement ¶ 111, ECF No. 195.) Plaintiff was in custody of the Illinois Department of Corrections from April 27, 2007 until January 21, 2010 and from November 2, 2012 until December 13, 2012 for 06-CR-13571. (Additional Facts in Response to Officers' Motion ¶ 48.)

On July 10, 2017, the Cook County Circuit Court entered orders vacating plaintiff's convictions in 04-CR-9579, 04-CR-17677, and 06-CR-13571, the cases stemming from the three arrests. (Additional Facts in Response to Officers' Motion ¶ 49.) On September 14, 2017, the Cook County Circuit Court entered orders granting plaintiff certificates of innocence in all three cases. (*Id.* ¶ 50.)

### III.  Plaintiff's Claims

Plaintiff sues the individual defendant officers for depriving him of rights secured by the Fourth Amendment when they fabricated evidence that caused the wrongful prosecutions ("federal malicious prosecution"). He also claims that he was deprived of liberty without due process of law because he was convicted three times based on fabricated evidence. And plaintiff brings a conspiracy claim against the individual defendant officers.

Plaintiff's complaint follows the Seventh Circuit's admonition in *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073 (7th Cir. 1992), that, "while it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it." *Id.* at 1078. Plaintiff's complaint also follows the teachings of the Seventh Circuit that a complaint need not plead legal theories. *See, e.g., Title Industry Assurance Co. v. First American Title Insurance Co.*, 853 F.3d 876, 880 (7th Cir. 2017). Defendants' argument for a different pleading standard (ECF No. 194 at 5-6, 33; ECF No. 197 at 1) "reflects a deep and too-common misunderstanding of federal pleading requirements." *Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023).

## IV.    Defendants Agree that Trial is Required on Plaintiff's Due Process Claim About his 2006 Prosecution

Plaintiff seeks to hold defendants Jones, Mohammed, Young, Smith, and Watts liable under the Due Process Clause for causing his conviction stemming from his arrest on May 19, 2006. (Complaint, ECF No. 1 ¶¶ 49-74.) Defendants Jones, Smith, and Watts do not move for summary judgment on this claim.

Defendants Mohammed and Young move for summary judgment on this claim by arguing that they were not personally involved in the arrest (ECF No. 194 at 15-17, ECF No. 197 at 3), but this argument is frivolous. Young testified that he and Mohammed were involved in the arrest. (Additional Facts in Response to Officers' Motions ¶ 45.) A jury could therefore conclude that these

officers were aware that plaintiff was being falsely arrested and falsely charged but did not intervene to prevent the violations of plaintiff's rights. *See Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 923 (N.D. Ill. 2013).

In addition, Mohammed asserted his Fifth Amendment rights and refused to answer the following questions: "Were you involved in arresting William Carter on May 19th, 2006?" and "Were you involved in framing William Carter on May 19th, 2006?" (Additional Facts in Response to Officers' Motions ¶ 46.) Based on this testimony, a jury could draw an adverse inference and conclude that Mohammed was involved in the arrest and involved in framing plaintiff. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995); *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 923 (N.D. Ill. 2013) ("Defendant Officers' blanket use of their Fifth Amendment rights drives another nail into their evidentiary coffin.")

The Seventh Circuit endorsed plaintiff's failure-to-intervene theory in *Cherry v. Washington County*, 526 F. App'x 683, 688 (7th Cir. 2013), a case that defendants cite. (ECF No. 194 at 15.) There, the plaintiff's excessive force claim failed because he did not identify which of three defendants used force against him. *Id.* But the Seventh Circuit explained: "We add the caveat, though, that a plaintiff who was assaulted by one police officer in the presence of others need not identify the officer who struck him if the assault was ongoing and other officers had 'a realistic opportunity to intervene.'" *Id.* (quoting *Miller v. Smith*,

220 F.3d 491, 495 (7th Cir. 2000); citing *Sanchez v. City of Chicago*, 700 F.3d 919, 925–26 (7th Cir. 2012).) Because Young and Mohammed were involved in the arrest, a jury could conclude that they knew the police story about the arrest was false, that they had a realistic opportunity to intervene and prevent the violation of plaintiff's rights, and that failed to do so.

The only other argument that defendants raise about plaintiff's due process claim stemming from plaintiff's arrest on May 19, 2006 is that they cannot be held liable for the act of giving false testimony at the court proceedings that led to plaintiff's conviction. (ECF No. 194 at 39-40.) This argument is a non-sequitur because plaintiff sues these officers for fabricating evidence at the time of his arrest, conduct that caused his wrongful conviction. That an officer repeats a fabrication in court does not insulate the officer from liability. As the Seventh Circuit holds,

> If an officer who fabricates evidence can immunize himself from liability by authenticating falsified documentary or physical evidence and then repeating the false "facts" in his trial testimony, wrongful-conviction claims premised on evidence fabrication would be a dead letter.

*Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017).

Thus, there is no dispute that trial is required on plaintiff's due process claims against defendants Jones, Smith, and Watts stemming from his arrest on May 19, 2006. The Court should also deny summary judgment to Mohammed

and Young on these claims because, as shown above, a jury could find that they were personally involved in plaintiff's arrest on May 19, 2006.

## V. The Court Should Reject Defendants' Other Argument About Personal Involvement

Plaintiff showed above that defendants Mohammed and Young cannot escape liability for their involvement in plaintiff's 2006 case. The same is true for the attempts of other officers to escape liability for the 2004 cases.

For claims arising from plaintiff's arrest on March 3, 2004, defendants Young, Mohammed, and Watts do not seek judgment based on a lack of personal involvement. (ECF No. 194 at 15-17; ECF No. 197 at 6; ECF No. 209 ¶ 2.) Only defendant Edwards argues that he is entitled to summary judgment for these claims based on a lack of personal involvement. (ECF No. 194 at 11-12.) The Court should have no patience with this argument because defendants agree that Edwards assisted the arresting officers. (Defendant Officers' Rule 56.1 Statement ¶ 9, ECF No. 195.) Four months after the arrest, Edwards completed a memo, affirmatively stating that he assisted in the arrest of plaintiff on March 3, 2024. (Additional Facts in Response to Officers' Motions ¶ 6.) And, as defendants themselves acknowledge, plaintiff viewed photos of officers shortly after the arrest and identified Edwards as having been present for the arrest. (Defendants' Statement of Facts ¶ 55; Additional Facts in Response to Officers' Motions ¶ 8.)

As explained above, based on the evidence that Edwards assisted in the arrest and was present for the arrest, a jury could conclude that he knew the facts surrounding the arrest and knew about the misconduct but did not intervene to stop it. *Cherry v. Washington County*, 526 F. App'x 683, 688 (7th Cir. 2013); *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 923 (N.D. Ill. 2013).

The Court should reject the identical arguments regarding plaintiff's arrest on June 18, 2004. For claims arising from these arrests, defendants Jones Edwards, and Watts do not seek judgment based on a lack of personal involvement. (ECF No. 194 at 11-12; ECF No. 209 ¶ 2.) Defendant Mohammed's argument based on personal involvement is easily resolved; plaintiff identified him as being present for the arrest (Additional Facts in Response to Officers' Motions ¶ 17) and Mohammed drafted a memo acknowledging that he was involved in the arrest. (*Id.* ¶ 19.) Moreover, Mohammed again took the Fifth when asked if he was involved in the arrest and whether he was involved in framing plaintiff on June 18, 2004. (*Id.* ¶ 25.) Plaintiff explained above why this evidence is sufficient on the issue of Mohammed's personal involvement.

The remaining defendants who seek judgment based on the personal involvement for the arrest on June 18, 2004 are Young, Rodriguez, and Ridgell. Plaintiff relies on the documentary evidence to show that these defendants had knowledge of the arrest. The Vice Case Report prepared by defendant Jones

lists Young, Rodriguez, and Ridgell in a box for "WITNESSED." (Additional Facts in Response to Officers' Motions ¶¶ 22-23.)[1] Defendant Jones has testified that this means the officers in that box witnessed some portion of the arrest. (*Id.* ¶ 24.) Defendants Mohammed and Young have given similar testimony. (*Id.* ¶ 24.)

Accordingly, there is enough evidence for a jury to conclude that these defendants had knowledge of the circumstances of the arrest and failed to intervene to prevent the violation of plaintiff's rights. Defendants do not address plaintiff's failure-to-intervene theory, instead proffering an artificially high standard for personal involvement based on rulings in easily distinguishable cases.

First, this is not a case like *Walker v. White*, No. 16 CV 7024, 2021 WL 1058096, at *14 (N.D. Ill. Mar. 19, 2021), where unrebutted evidence showed that certain defendants were not present when the alleged misconduct occurred. (ECF No. 194 at 7-8.) The defendants who claim a lack of personal involvement have not presented any evidence to support that claim; they

---

[1] Defendant Ridgell argues that the report should be excluded as hearsay (ECF No. 194 at 11), but this is argument cannot be taken seriously where defendants repeatedly seek to rely on police reports. (Defendants' Statement of Facts ¶¶ 9, 13, 28, 29, 30, 31, 36, 40.) The argument is also wrong. Federal Rule of Civil Procedure 56(c)(2) states that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Whether or not the report is admissible, the material cited can be presented through the testimony of defendant Jones, who authored the report.

uniformly claim to have no memory of plaintiff's arrests. (Defendant Officers' Rule 56.1 Statement ¶¶ 20, 22, 79, ECF No. 195.)

Next, defendants attempt to import a standard applied in a case where a witness gave a false statement to police. (ECF No. 194 at 8-9.) The Seventh Circuit held in *Coleman v. City of Peoria*, 925 F.3d 336 (7th Cir. 2019) that the defendant officer could only be liable for eliciting the statement if the officer knew the statement was false and caused the witness to give the false statement. *Id.* at 344. This standard for direct liability does not apply to defendants whom plaintiff seeks to hold liable under a failure-to-intervene theory. And even if the requirement that an officer know "with certainty" that a witness statement was false, *id.*, applies here, plaintiff meets that requirement. Any officer who was involved in plaintiff's arrest would know that it was a wrongful arrest and would have a duty to intervene to prevent the violation of plaintiff's rights.

Finally, defendant Ridgell alone raises a meritless argument based on Federal Rule of Civil Procedure 37. (ECF No. 194 at 9-10.) The Seventh Circuit applied that rule against a plaintiff in *Moran v. Calumet City*, 54 F.4th 483 (7th Cir. 2022). In that case, an interrogatory requested the plaintiff to state the factual basis for a certain allegation. *Id.* at 497. The Seventh Circuit held that the plaintiff could not rely on a particular piece of evidence not included in the answer to this interrogatory. *Id.* Here, though, plaintiff was not asked the

factual basis for his claim; he was asked for his personal knowledge about acts taking by the defendant officers and he properly answered. (Defendant Officers' Rule 56.1 Statement ¶¶ 60, 63, 83, ECF No. 195.) The evidence on which plaintiff relies is not his personal knowledge but a document that defendants themselves attach as an exhibit and testimony given by defendants. Any shortcoming in plaintiff's interrogatory answer was harmless. FED. R. CIV. P. 37(c)(1); *see Stolarczyk ex rel. Est. of Stolarczyk v. Senator Int'l Freight Forwarding, LLC*, 376 F. Supp. 2d 834, 843 (N.D. Ill. 2005).

## VI. Plaintiff's Claims About His 2004 Arrests Are Not Barred by His Vacated Guilty Pleas

The Court should reject defendants' frivolous argument that plaintiff's vacated guilty pleas related to his 2004 arrests "extinguish any claims" arising from those arrests. (ECF No. 194 at 17.) Defendants base this argument on an attempt to import reasoning from federal habeas cases, but the Supreme Court rejected this argument in *Haring v. Prosise*, 462 U.S. 306 (1983). In addition, this Court's predecessor judge rejected the argument on defendants' motion to dismiss. (ECF No. 43 at 9-13.) Judge Gettleman ruled as follows:

> Defendants also argue that any due process claim based on the 2004 convictions are barred by plaintiff's guilty pleas in those cases. According to defendant, *Avery* [*v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017)] holds that a due process claim based on fabricated evidence is viable only when the allegedly fabricated evidence was admitted against a plaintiff at trial and caused the conviction. *See Avery*, 847 F.3d at 442. Defendants argue that plaintiff never went to trial on the 2004 cases and his guilty plea "broke the causal chain connecting the alleged acts

of fabrication to plaintiff's convictions and subsequent imprisonments." According to defendants, the pleas can be attacked only by establishing that they were not voluntary or knowing. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Once again, the court disagrees.

Plaintiff alleges that the only reason he pled guilty in the two cases was because he knew he could not prove that the individual defendant officers had fabricated the evidence against him. As *Whitlock* [*v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012)] held, "a police officer who manufactures false evidence against the criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty *in some way*." *Whitlock*, 682 F.3d at 580 (emphasis added). The "due process violation—that is the liberty deprivation—caused by fabricated evidence results from its use to secure the defendant's conviction, not from its use at trial. *Saunders v. City of Chicago*, 2014 WL 3535723, *4 (N.D. Ill. July 11, 2014) (*citing Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012)). "Defendants' misconduct can be said to cause the injury insofar as it influences the criminal defendant's decision to take the plea after taking stock of the lack of exculpatory evidence in his possession (complete or not) and inculpatory evidence in the government's possession (false or not)." *Id.* Thus, it reasonably can be said that the fabricated evidence caused plaintiff to be deprived of his liberty. Id., see also *Powell* [*v. City of Chicago*, 2018 WL 1211576, *8 (N.D. Ill. Mar. 8, 2018).] Consequently, plaintiff's Fourteenth Amendment due process claims are sufficiently pled and state a claim.

*Carter v. City of Chicago*, No. 17 C 7241, 2018 WL 1726421, at *5 (N.D. Ill. Apr. 10, 2018).

Judge Gettleman's ruling is law of the case, meaning this Court should reconsider that ruling only "if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous."

-15-

*Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006). This doctrine has greater force in a case like this one, where, "there is a change of judges during the litigation and the new judge is asked to revisit the rulings of his [or her] predecessor." *HK Sys., Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009).

Defendants acknowledge Judge Gettleman's ruling only in passing when they note that "some other judges in this District addressed some of these issues at the pleading stage." (ECF No. 194 at 23.) The Court should not tolerate this misstatement of the record. Because defendants have failed to make any argument that there is a compelling reason for the Court to revisit Judge Gettleman's ruling, the Court should deem this argument waived. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.")

In any event, defendants' argument is as frivolous as it was when Judge Gettleman ruled on it because defendants seek to rely on a legal theory that the Supreme Court rejected decades ago in *Haring v. Prosise*, 462 U.S. 306, 308-309 (1983). Defendants do not cite a single case with facts like this one: a civil rights plaintiff seeking relief in connection with a vacated guilty plea. Instead, defendants seek to rely (ECF No. 194 at 18) on cases that are readily distinguishable because each one arose in a federal habeas proceeding where a

-16-

prisoner sought to challenge an intact guilty plea. *Tollett v. Henderson*, 411 U.S. 258 (1973); *McMann v. Richardson*, 397 U.S. 759 (1970); *Brady v. United States*, 397 U.S. 742 (1970); *Parker v. North Carolina*, 397 U.S. 790 (1970); *Hurlow v. United States*, 726 F.3d 958 (7th Cir. 2013). The rule of these cases is that a federal habeas petitioner who pleaded guilty cannot attack the conviction based on constitutional deprivations unrelated to the plea. This rule has no application here because plaintiff is not seeking release from custody nor is he challenging his plea. Plaintiff's conviction and guilty plea have been vacated and he is not in custody on a vacated conviction.

The express holding of *Haring v. Prosise*, 462 U.S. 306 (1983) is that the habeas cases on which defendants seek to rely do not apply to plaintiff's § 1983 claims. *Id.* at 322. But defendants make no attempt to discuss *Haring*. The Court should reject this litigation strategy: "The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless." *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987)

The plaintiff in *Haring* had pleaded guilty to a drug offense and brought a civil rights claim challenging the legality of the search that led to his conviction. *Haring v. Prosise*, 462 U.S. 306, 308-309 (1983). The district court reasoned that the plaintiff's guilty plea barred his claim based on the exact

argument that defendants' raise here. As the Supreme Court explained, the district court adopted the argument pressed by defendants here:

> It relied primarily on this Court's decision in *Tollett v. Henderson*, 411 U.S. 258 (1973), which held that when a state criminal defendant has pleaded guilty to the offense for which he was indicted by the grand jury, he cannot in a later federal habeas corpus proceeding raise a claim of discrimination in the selection of the grand jury."

*Id.* at 309.

The Supreme Court squarely rejected the district court's reasoning, holding that the "the justifications for denying habeas review of Fourth Amendment claims following a guilty plea are inapplicable to an action under § 1983." *Haring v. Prosise*, 462 U.S. 306, 322 (1983). This holding that the reasoning of *Tollet* and other cases has not application in a civil rights action dooms defendants' attempt to argue to the contrary. The Supreme Court's opinion in *Haring*, announced long before the conduct at issue in this case also dooms defendants' perfunctory argument about qualified immunity. (ECF No. 194 at 29-30.) Plaintiff addresses defendants' qualified immunity arguments in greater detail below in Section IX.

The holding of *Haring* is that the viability of a civil rights claim following a guilty plea depends, in the first instance, on the collateral estoppel effect that would be given to the plea in the forum where the plea was entered. *Haring v. Prosise*, 462 U.S. 306, 314 (1983). Defendants do not directly argue that Illinois law would give *any* collateral estoppel effect to a vacated plea of guilty. It is

-18-

axiomatic that collateral estoppel only applies when there is "a final judgment on the merits in the prior adjudication." *Givens v. City of Chicago*, 2023 IL 127837, ¶ 48, 234 N.E.3d 22, 36 (2023.)

The Illinois Supreme Court in *People v. Washington*, 2023 IL 127952, 226 N.E.3d 1218 (2023) made plain that a vacated guilty plea does not bar a a claim for relief related to the conviction. There, the Court squarely held that persons (like plaintiff) who pleaded guilty but then secured vacatur of the plea, are not barred from obtaining a certificate of innocence. 2023 IL 127952, ¶ 62, 226 N.E.3d at 1237. The Court should therefore reject the City's attempt to rely on plaintiff's vacated guilty pleas.

The Court should also reject defendants' related argument that plaintiff may not challenge his guilty plea because he failed to challenge the findings of the trial court when it accepted his plea in state court. (ECF No. 194 at 29.) This argument is difficult to follow; when the convictions and pleas were vacated, the underlying findings were also vacated. In any event, defendants rely on reasoning in district court cases that the Seventh Circuit has squarely rejected. The Seventh Circuit decided this issue in *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1022 (7th Cir. 2006), when it rejected the holding of *Thompson v. Mueller*, 976 F. Supp. 762, 763 (N.D. Ill. 1997) that a probable cause determination has preclusive effect following an acquittal. The Court should reject defendants' invitation to rely on *Thompson* or on *Wallace v. City*

*of Chicago*, 472 F. Supp. 2d 942, 948 (N.D. Ill. 2004),[2] which cited *Thompson* and applied its reasoning.

Defendants also argue that by pleading guilty, plaintiff conceded that there was probable cause for his arrests and prosecutions. (ECF No. 194 at 36-37.) This is another argument that makes no sense when the guilty pleas have been vacated—defendants' reliance on cases with intact guilty pleas is difficult to understand.[3] Defendants also seek support from cases about out-of-court statements to police,[4] which are plainly distinguishable from in-court guilty pleas that have been vacated. The only case relied on by defendants that involves a vacated guilty plea is *Bontkowski v. United States*, 28 F.3d. 36 (7th Cir. 1994), but the plea there was vacated based on a change in the law; at the time of the guilty plea the undisputed facts constituted probable cause. *Id.* at 37. There was no change of law here; whether the facts underlying plaintiff's arrests constitute probable cause is the key disputed issue in this case.

Every district court to consider defendants' argument has rejected it. In addition to Judge Gettleman's ruling in this case, courts have rejected the argument in *Mendoza v. City of Chicago*, 23-cv-2441, 2024 WL 1521450, at *2

---

[2] As defendants note, *Wallace* was affirmed on other grounds by the Seventh Circuit, 440 F.3d 421 (7th Cir. 2006). It was then affirmed by the Supreme Court. *Wallace v. Kato*, 549 U.S. 384 (2007). Neither court considered the portion of the district court's ruling on which defendants seek to rely.

[3] *Gray v. Burke*, 466 F.Supp.2d 991 (N.D. Ill. 2006); *Gribben v. Vill. of Summit*, No. 08 C 0123, 2011 WL 289420, at *1 (N.D. Ill. Jan. 26, 2011).

[4] *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016); *Zolicoffer v. City of Chicago*, No. 11 C 6362, 2013 WL 1181501, at *4 (N.D.Ill. 2013).

(N.D. Ill. Apr. 8, 2024); *In re Watts Coordinated Pretrial Proceedings*, 19-cv-1717, 2022 WL 9468206, at *7 (N.D. Ill. Oct. 14, 2022); *Baker v. City of Chicago*, 483 F. Supp. 3d 543, 553 (N.D. Ill. 2020); *White v. City of Chicago*, 17-cv-02877, 2018 WL 1702950, at *3 (N.D. Ill. Mar. 31, 2018); *Powell v. City of Chicago*, 17-cv-5156, 2018 WL 1211576, at *8 (N.D. Ill. Mar. 8, 2018); *Saunders v. City of Chicago*, 12-cv-09158, 2014 WL 3535723, at *4 (N.D. Ill. July 11, 2014); *Ollins v. O'Brien*, 03 C 5795, 2005 WL 730987, at *11 (N.D. Ill. Mar. 28, 2005). Defendants provide no reason for the Court to break with this line of persuasive authority.

### VII. Plaintiff's Due Process Claims About His 2004 Arrests Are Not Barred Because There Was No Trial

Defendants also argue that plaintiff's due process claims related to his 2004 arrests are barred because there was no trial on the charges against plaintiff. (ECF No. 194 at 30-33.) Again, Judge Gettleman's rejection of this argument is law of the case that defendants have not even attempted to overcome. *Carter v. City of Chicago*, No. 17 C 7241, 2018 WL 1726421, at *5 (N.D. Ill. Apr. 10, 2018). And other courts in this district have repeatedly rejected this argument. *E.g.*, *Mendoza v. City of Chicago*, 23-cv-2441, 2024 WL 1521450, at *2 (N.D. Ill. Apr. 8, 2024); *Baker v. City of Chicago*, 483 F. Supp. 3d 543, 553 (N.D. Ill. 2020).

As Judge Valderrama ruled, defendants' theory "would reward egregious deliberate misconduct from state actors by making conviction following trial the only pathway to vindicate constitutional violations." *In re*

*Watts Coordinated Pretrial Proceedings*, No. 19-CV-1717, 2022 WL 9468253, at *5 (N.D. Ill. Oct. 14, 2022). Defendants cannot show that the Court should depart from this line of authority.

The Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 579 (7th Cir. 2012). "How the fabricated evidence came into play is not as critical to establish the constitutional violation as the fact that the fabricated evidence was a direct cause of a Defendants' conviction." *White v. City of Chicago*, 17-cv-02877, 2018 WL 1702950, at *3 (N.D. Ill. Mar. 31, 2018) (citing *Whitlock*, 682 F.3d, at 582.)

Defendants' argument for dismissal rests on an interpretation of Seventh Circuit precedent that no district court has accepted. The crux of this argument is a misreading of the Seventh Circuit's holdings in *Patrick v. Chicago*, 974 F.3d 824 (7th Cir. 2020) and other cases. (ECF No. 194 at 31.)

In *Patrick*, the plaintiff was convicted of a double murder because his coerced confession and a falsified lineup report were used against him *during his criminal trial*. *Patrick*, 974 F.3d at 835-36. A civil suit followed, resulting in a verdict for the plaintiff. *Id.* at 830-31. On appeal, the Seventh Circuit held that the district court committed harmless error by providing an incomplete jury instruction that failed to explain that plaintiff had the burden to prove that

the fabricated evidence was used against him at his criminal trial and was material. *Id.* at 835. In other words, a fabrication of evidence claim based on a conviction following trial requires proof that the fabricated evidence was used at trial. Otherwise, the fabricated evidence could not be said to have caused the guilty verdict. *Patrick* states a rule that applies when there is a trial, but nowhere does *Patrick* state that use of fabricated evidence at trial is *always* required to make out a Fourteenth Amendment due process violation.[5]

As the Seventh Circuit held in *Armstrong v. Daily*, 786 F.3d 529 (7th Cir. 2015), a case that arose from the destruction of exculpatory evidence, a trial is not required for police misconduct to violate the Due Process Clause. *Id.* at 551-55. Other decisions from the Seventh Circuit likewise define the due process right without regard to whether the fabricated evidence was used at trial. In *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017), the Court wrote that "convictions premised on deliberately fabricated evidence will *always* violate the defendant's right to due process." *Id.* at 439 (emphasis added). The Court repeated this formulation in *Lewis v. City of Chicago*, 914

---

[5] The same is true for district court rulings cited by defendants. (ECF No. 194 at 32.) As in *Patrick*, there were trials in *Brown v. City of Chicago*, 633 F. Supp. 3d 1122 (N.D. Ill. 2022); *Boyd v. City of Chicago*, 225 F. Supp. 3d 708 (N.D. Ill. 2016); and *Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1048 (N.D. Ill. 2015). Defendants misrepresent these cases when they cite them as purported support for the claim that "fabrication of evidence claims premised on guilty pleas are routinely dismissed." (ECF No. 194 at 32.) Defendants also seek to rely (*id.*) on *Ulmer v. Avila*, No. 15 CV 3659, 2016 WL 3671449, at *8 (N.D. Ill. July 11, 2016), but that ruling is distinguishable because the plaintiff was never convicted.

F.3d 472, 479 (7th Cir. 2019). This rule does not have a carve-out for convictions that follow a guilty plea.

In *Patrick*, the Seventh Circuit endorsed its pattern jury instruction on fabricated evidence. *Patrick v. Chicago*, 974 F.3d 824, 835 (7th Cir. 2020). That instruction provides two paths to showing that fabricated evidence was used to deprive a plaintiff of his liberty: plaintiff must prove either that the fabricated evidence was "introduced against plaintiff at his criminal trial" or "in his criminal case." SEVENTH CIRCUIT'S PATTERN JURY INSTRUCTION § 7.14 (2017). As discussed below, plaintiff relies on the second path.

It is unsurprising that the *Patrick* court only referenced the "trial" prong of this instruction because the issue under review was a jury instruction in a case where there had been a trial. The other cases that defendants cite are similarly inapposite because they involved plaintiffs convicted after a trial, rather than a guilty plea. *Moran v. Calumet City*, 54 F.4th 483 (7th Cir. 2022); *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014); *Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017).

Here, however, plaintiff did not have a trial, but the fabricated evidence was indisputably used in his criminal case. The evidence was used in the complaints that initiated the charges against plaintiff (Additional Facts in Response to Officers' Motions ¶¶ 9, 26); the evidence was presented at a preliminary hearing in one case and to the grand jury in the other case (*id.* ¶¶

14, 26); it caused plaintiff to plead guilty in each case; and the evidence was presented to the trial judge before the court accepted plaintiff's guilty pleas in each case. (*Id.* ¶¶ 35-37.)

## VIII. Meritless Fourth Amendment Arguments

Defendants also raise several meritless arguments about plaintiff's Fourth Amendment claim. This Court recently explained the legal basis for this claim:

> Plaintiff brings a section 1983 claim for malicious prosecution under the Fourth Amendment. (Compl. at ¶ 44, Dkt. 1), which the Supreme Court has held is legally cognizable. *Thompson v. Clark*, 596 U.S. 36, 42 (2022). "To succeed on [a Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983], a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon, Ohio*, 144 S.Ct. 1745, 1748 (2024). A seizure must have occurred for a malicious prosecution claim to proceed. *Id.* at 1751.

*Wilson v. Smith*, No. 22 C 04413, 2024 WL 4753670, at *7 (N.D. Ill. Nov. 12, 2024).

### A. Plaintiff's Fourth Amendment Claim is Timely

Defendants first argue that plaintiff has two separate Fourth Amendment claims: one based on "unlawful pretrial detention" and one "seeking recovery for a posttrial deprivation of liberty and prosecution." (ECF No. 41 at 33.) Defendants appear to be suggesting that the federal malicious prosecution claim discussed in *Thompson v. Clark*, 596 U.S. 36 (2022) is distinct from the claim for unlawful pretrial detention discussed in *Manuel v. Joliet*, 580

U.S. 357 (2017). This is incorrect; the Supreme Court's opinion in *Thompson* confirms that the claim in *Thompson* is the same claim in *Manuel*. *Thompson*, 596 U.S. at 42, 43 n.2.

As part of this misguided argument, defendants assert that any claim based on unlawful pretrial detention accrued when the pretrial detention ended. (ECF No. 41 at 33-34.) This is yet another frivolous argument. The Supreme Court rejected the accrual theory urged by defendants in *Thompson v. Clark*, 596 U.S. 36 (2022). The Seventh Circuit had followed that theory in *Smith v. Chicago*, 3 F.4th 332 (7th Cir. 2021), but the Supreme Court thereafter granted the petition for certiorari in *Smith* and vacated the decision of the Seventh Circuit. *Smith v. Chicago*, 142 S. Ct. 1665 (2022).

The Seventh Circuit acknowledged the change in circuit law in its orders on remand in *Smith*, available at 2022 WL 2752603 (7th Cir. 2022), as amended on denial of rehearing, 2022 WL 19572962 (7th Cir. 2022): "After *Thompson*, a Fourth Amendment claim for malicious prosecution accrues when the underlying criminal prosecution is terminated without a conviction." 2022 WL 2752603 at *1. There is no dispute that the prosecutions against plaintiff were terminated without a conviction when plaintiff's convictions were vacated on July 10, 2017. (Additional Facts in Response to Officers' Motions ¶ 49.) Plaintiff's claims are timely because he filed this case on October 6, 2017. (Complaint, ECF No. 1.)

Defendants make the frivolous argument that *Smith* does not control because the Seventh Circuit reversed "to the extent [the] Fourth Amendment claim was construed as one for Malicious Prosecution under *Thompson v. Clark*." (ECF No. 194 at 42.) The Seventh Circuit neither discussed nor applied this limitation. The plaintiff in *Smith* was acquitted at trial, meaning he suffered only pretrial detention. *Smith v. City of Chicago*, 3 F.4th 332, 334 (7th Cir. 2021). If defendants were correct that a claim about pretrial detention accrues when the detention ends, the Seventh Circuit would not have reversed the district court's ruling after remand from the Supreme Court in *Smith*.

In any event, even under the rejected accrual theory proffered by defendants, plaintiff's fourth amendment claims would be timely because plaintiff was "*Heck* barred" from bringing § 1983 claims upon conviction. As the Supreme Court stated in *Heck v. Humphrey*, 512 U.S. 477 (1994):

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id.* at 486–87 (1994).

-27-

Pursuant to *Heck*, the claims at issue in this case did not become "cognizable under § 1983" until July 10, 2017, when the state court set aside plaintiff's convictions. As the Seventh Circuit has explained, "*Heck* holds that a claim that implies the invalidity of a criminal conviction does not accrue, and the statute of limitations does not begin to run, until the conviction is set aside by the judiciary or the defendant receives a pardon." *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014).

### B. Plaintiff Satisfied the Custody Element for His Fourth Amendment Claims

Defendants next argue that plaintiff's Fourth Amendment claims related to his 2004 arrests fail because he did not serve any time in pretrial detention. (ECF 194 at 37-39.) This argument is wrong on the facts: after both arrests, plaintiff *was* in custody between the time of his arrests and his bond hearings. (Additional Facts in Response to Officers' Motions ¶¶ 10-13, 28-31.) This Court recently considered this argument in a case where the plaintiff "spent only one night in jail after he was arrested and was released the following day after his bond hearing." *Wilson v. Smith*, No. 22 C 04413, 2024 WL 4753670, at *7 (N.D. Ill. Nov. 12, 2024). This Court held that these facts were sufficient to satisfy the seizure requirement of a fourth amendment claim for malicious prosecution:

> Plaintiff has established that he was seized when arrested and detained overnight. A seizure occurs "'when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Artman v. Gualandri*, No.

-28-

> 20 C 4501, 2021 WL 2254961, at *4 (N.D. Ill. June 3, 2021)
> (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). It is well
> established that an arrest is a seizure for Fourth Amendment
> purposes. *Torres v. Madrid*, 592 U.S. 306, 312 (2021); *Ashcroft
> v. al-Kidd*, 563 U.S. 731, 735 (2011). Therefore, Plaintiff's
> Fourth Amendment claim is viable.

*Id.* The Court should follow *Wilson* and hold that plaintiff has satisfied the custody element for his Fourth Amendment claims because he spent one night in jail after his arrests on March 3, 2004 and June 18, 2004.

Plaintiff also satisfies the custody element with his post-conviction detention; plaintiff served time in custody before and after he was re-sentenced for violating his probation. (Additional Facts in Response to Officers' Motions ¶¶ 41-42.) Defendants mistakenly contend that the harm from this detention is not recoverable because this entire period of detention was "credited concurrently to a lawful sentence for unrelated intact convictions and probation violations." (ECF No. 194 at 37.) Plaintiff was not serving time that was credited to another sentence as in *Patrick v. City of Chicago*, 81 F.4th 730, 737 (7th Cir. 2023). His sentence for the misdemeanor domestic violence conviction was probation. (Additional Facts in Response to Officers' Motions ¶ 39.)

Defendants may be arguing that a re-sentencing for a probation violation cuts off any connection between the new sentence and the original conviction, but they do not cite any precedent in support of this argument. The Court should hold that this argument raises a causation question for the finder of fact. *Wisconsin Mut. Ins. Co. v. United States*, 441 F.3d 502, 505 (7th Cir. 2006).

## IX.  Defendants Are Not Entitled to Qualified Immunity

Defendants raise two arguments for qualified immunity: they argue that it was not clearly established that they could be held liable for misconduct claims of an exoneree who did not have a trial because he pleaded guilty (ECF No. 194 at 29-30, 33) and that a claim based on the Supreme Court's opinion in *Thompson v. Clark*, 596 U.S. 36, 49 (2022) is barred by qualified immunity (*Id.* at 34-36). Plaintiff showed above that the law on claims following guilty pleas has been clearly established since the Supreme Court rejected defendants' legal theory in *Haring v. Prosise*, 462 U.S. 306 (1983).

In addition, both qualified immunity arguments are of the same type that the Seventh Circuit rejected in *Armstrong v. Daily*, 786 F.3d 529, 556 (7th Cir. 2015). The only arguably unsettled area of the law was about the remedy available for certain constitutional violations, but a question about a remedy cannot be the basis for qualified immunity:

> This argument is built on a basic misunderstanding about qualified immunity. The issue is not whether issues concerning the availability of a remedy are settled. The qualified immunity defense focuses instead on whether the official defendant's conduct violated a clearly established constitutional right.

*Armstrong*, 786 F.3d at 556. As explained in *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014), "when the question is whether to grant immunity to a public employee, the focus is on his conduct, not on whether that conduct gave rise to a tort in a particular case." *Id.* at 1114.

The Seventh Circuit applied this rule and rejected the argument advanced by defendants in *Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015), on remand from the Supreme Court. In that case, the Supreme Court held that the excessive force claim of a pretrial detainee was governed by an objective standard rather than by a subjective standard. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

On remand, the Seventh Circuit held that this change in the standard did not give rise to qualified immunity because the standard for the type of conduct permitted by the Constitution had not changed. *Kingsley*, 801 F.3d at 832. As the Court explained,

> To accept the defense of qualified immunity here, we would have to accept the dubious proposition that, at the time the officers acted, they were on notice only that they could not have a reckless or malicious intent and that, as long as they acted without such an intent, they could apply any degree of force they chose.

*Id.* at 832-33.

The Court should reject defendants' qualified immunity argument because it is limited to issues "concerning the availability of a remedy." *Armstrong v. Daily*, 786 F.3d 529, 556 (7th Cir. 2015). Defendants refrain from arguing that causing an arrestee to be detained by fabricating evidence and falsifying police reports did not violate clearly established rights. The Supreme Court has long condemned such conduct as "inconsistent with the rudimentary demands of justice." *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). It has long

-31-

been established that the Fourth Amendment guarantees "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint." *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). In addition, "innumerable decisions . . . have clearly established the right to be free from arrest without probable cause." *Driebel v. City of Milwaukee*, 298 F.3d 622, 652 (7th Cir. 2002).

Rather than argue that their misconduct did not violate clearly established constitutional rights, defendants rely on *Bianchi v. McQueen*, 818 F.3d 309, 323 (7th Cir. 2016), to seek dismissal on the ground that the availability of a remedy was uncertain. *Bianchi* does not support that position. As another court in this district has explained, *Bianchi*'s "holding is based on the first prong of the qualified immunity analysis—whether a constitutional violation was alleged—and not the second—whether the right was clearly established at the time of violation." *Serrano v. Guevara*, 315 F. Supp. 3d 1026, 1038 (N.D. Ill. 2018). "Otherwise, the holding would conflict with the principle that qualified immunity is concerned with the conduct, not the tort." *Id.*

The Court should reject the "dubious proposition" that even though defendants were on notice that they could neither arrest plaintiff without probable cause nor create the appearance of probable cause by fabricating evidence, they reasonably believed that their liability for such wrongdoing would end if plaintiff pleaded guilty and was convicted without a trial.

## X.    Conspiracy

Defendants do not address plaintiff's conspiracy claim. They cannot claim surprise about this claim as Judge Gettleman discussed it in the ruling on the motion to dismiss. *Carter v. City of Chicago*, No. 17 C 7241, 2018 WL 1726421, at *5 (N.D. Ill. Apr. 10, 2018). Any argument for judgment on this claim is forfeited.

## XI.   Conclusion

For all these reasons, the Court should deny the defendant officers' motions for summary judgment.

Respectfully submitted,

/s/   Joel A. Flaxman
Joel A. Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
200 S Michigan Ave Ste 201
Chicago, IL 60604-2430
(312) 427-3200
*Attorneys for Plaintiff*